# SAM NEMO, *d. b. a.* ROMAN CAFE, v. LOCAL JOINT EXECUTIVE BOARD AND HOTEL & RESTAURANT EMPLOYEES' LOCAL NO. 556.[1]

December 24, 1948.

No. 34,890.

---

[1]Reported in 35 N. W. (2d) 337, 811.

*S. Robins* and *Robins, Davis & Lyons,* for relator.

*Alfred R. Sundberg,* for respondent Sam Nemo.

*J. A. A. Burnquist,* Attorney General, *George B. Sjoselius,* Deputy Attorney General, for respondent Harry L. Hanson.

KNUTSON, JUSTICE.

Respondent has owned and operated a restaurant in the city of St. Paul for a number of years. Relator is an unincorporated labor organization affiliated with the American Federation of Labor. Its members are cooks and waiters employed in the cities of St. Paul and Minneapolis and elsewhere.

For several years relator has sought to have respondent sign a closed-shop contract covering respondent's employes. Respondent has refused to sign such contract until his employes joined relator's union, contending that it would be unlawful for him to do so. On September 9, 1948, a contract was presented to Joe Nemo, respond-

ent's manager, by a representative of relator. Mr. Nemo refused to sign unless relator could show that it represented a majority of the employes of respondent. Thereafter, on September 15, 1948, one picket was placed at the front door and one at the rear door of respondent's place of business. On September 17, 1948, respondent filed a request for an investigation by the labor conciliator under M. S. A. 179.16. Notice of hearing on the petition, addressed to "Local Joint Exec. Board, AFL, and Local #556 Hotel & Restaurant Employees Union," was sent by registered mail by the conciliator. Return receipt was received by the conciliator signed "556 Local" on the line provided for the signature of the addressee, and "M. Broderick" on the line provided for the signature of addressee's agent.

The matter came on for hearing on September 29, 1948. Respondent appeared, and relator entered a special appearance objecting to the jurisdiction of the conciliator on the grounds, first, that no proper notice of the hearing had been served, and, second, that relator did not claim to represent a majority of the employes of respondent and did not claim to be the representative of such employes for collective bargaining. The conciliator proceeded to take testimony and at the completion of the hearing made and filed his findings of fact and conclusions of law on October 9, 1948, determining that no question of representation existed between Local Joint Executive Board and respondent, but that a question of representation existed between Hotel & Restaurant Employees' Local No. 556 and respondent, and ordered an election to be held on October 18, 1948, for the purpose of determining whether a majority of respondent's employes desired to be represented by said union. Consequently, when we refer to relator herein we have reference to Hotel & Restaurant Employees' Local No. 556.

A petition for a writ of prohibition was thereafter submitted, wherein relator again states that it does not represent a majority of respondent's employes for collective bargaining and is not the authorized representative of such employes for collective bargaining. Thereupon, this court issued an alternative writ of prohibition restraining the labor conciliator from proceeding with the election

and an order to show cause why such writ should not be made absolute.

It is the contention of respondent that a writ of prohibition is not available to relator and that the conciliator does have jurisdiction over the matter for the purpose of proceeding with an election to determine whether respondent's employes desire to have relator represent them for collective bargaining. It is the position of relator that, inasmuch as it does not claim to represent a majority of respondent's employes and does not claim to be the representative of such employes for collective bargaining, there is no controversy; hence that the conciliator has no jurisdiction to proceed with an election and that the proceedings should be dismissed. Relator also contends that a writ of prohibition is available and that it is the proper and necessary remedy to restrain the conciliator from proceeding with the election.

■ We believe that the service upon relator was sufficient. The labor conciliator is authorized by law to adopt rules regulating the conduct of hearings. M. S. A. 179.05. Such rules have been adopted and are on file pursuant to law. The rules so adopted do not prescribe any particular manner of service of notice, but simply provide for notice of the hearing. Neither is there any provision in the law prescribing any method of service of a notice of such hearing. It is apparent that the notice mailed by the conciliator actually came into the possession of relator. Where actual notice is received by mail, it is equivalent to personal service. In re Estate of Nelson, 180 Minn. 570, 231 N. W. 218; In re Estate of Devenney, 192 Minn. 265, 256 N. W. 104. In the absence of proof to the contrary, it is presumed that mail properly addressed and posted, with postage prepaid, is duly received by the addressee. Melby v. D. M. Osborne & Co. 33 Minn. 492, 24 N. W. 253; In re Estate of Devenney, *supra*. In addition to the presumption of delivery in this case, we have the return receipt purporting to have been signed by an agent of relator. If the purported agent who signed the receipt was not in fact such agent, it was incumbent upon relator to offer proof of that fact.

In the absence of proof to the contrary, the presumption of delivery must prevail.

■ A writ of prohibition is an extraordinary writ issued for the purpose of preventing inferior courts or tribunals or other individuals invested by law with judicial or quasi-judicial authority from going beyond their jurisdiction. 5 Dunnell, Dig. & Supp. § 7840.

■ Three things are essential to justify the issuance of the writ. It must appear (1) that the court, officer, or person against whom it issues is about to exercise judicial or quasi-judicial power; (2) that the exercise of such power by such court, officer, or person is unauthorized by law; and (3) that it will result in injury for which there is no other adequate remedy at law. State ex rel. Hahn v. Young, 29 Minn. 474, 523, 9 N. W. 737, 738; State ex rel. Roberts v. Hense, 135 Minn. 99, 160 N. W. 198.

The writ is not available to prevent the performance of purely ministerial or administrative acts. O'Neill v. Kallsen, 222 Minn. 379, 24 N. W. (2d) 715.

■ In a proceeding of this kind, the labor conciliator, in a proper case, investigates and finds facts and draws therefrom conclusions of law from which he determines the legal rights of the parties involved, consistent with the authority and power vested in him by law. As such, he acts in a quasi-judicial capacity. Hathaway Bakeries, Inc. v. Labor Relations Comm. 316 Mass. 136, 55 N. E. (2d) 254; Thompson Products, Inc. v. N. L. R. B. (6 Cir.) 133 F. (2d) 637, holding that the actions of the National Labor Relations Board are quasi-judicial in character. In Robinette v. Price, 214 Minn. 521, 533, 8 N. W. (2d) 800, 807, we held that certain duties of the county welfare board are quasi-judicial in character. In that case we said:

"* * * All that the members of the welfare board did in the instant case was strictly in line with their duties under the statutes. Such duties are governmental, and, since they involve inquiry of fact and the exercise of judgment based on such inquiry, they are not ministerial, but *quasi judicial* in nature."

See, also, Oakman v. City of Eveleth, 163 Minn. 100, 203 N. W. 514.

■  Fundamentally, the objects to be attained by an investigation and election under § 179.16 are not materially different from those contemplated by investigations and elections under the Labor Management Relations Act, 1947. The object of both is to provide a method whereby a controversy may be resolved between an employer and employes, an employer and someone claiming to act as a bargaining representative for the employes, or between two or more individuals or organizations claiming to act as bargaining representatives for the employes of an employer for collective bargaining. There is this difference in the two acts, in that under the federal act the petition of an employer must state that one or more individuals or labor organizations have presented to him a claim to be recognized as the bargaining agent, 29 USCA, § 159(c)(1)(B), while under the Minnesota act it is only necessary for the employer to raise a question concerning the representatives of his employes. However, our act does contemplate that a controversy exists as to bargaining agents between employer and employes, between the employer and some individual or organization seeking to represent the employes, or between rival organizations claiming to act as bargaining agents. It follows that when it appears that a controversy no longer exists the authority of the conciliator to investigate and determine a controversy ceases, and he can proceed no further.

The purpose of the investigation, when the question is raised, is to determine the name or names of representatives of the employes for the purpose of collective bargaining. Section 179.16, subd. 1, provides that representatives designated or selected for the purpose of collective bargaining by the majority of the employes in a unit appropriate for such purposes shall be the exclusive representatives of all the employes in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment. Subd. 2 of the act, insofar as material here, provides:

"*When a question* concerning the representative of employees *is raised by an* employee, group of employees, labor organization, or *employer the labor conciliator* or any person designated by him *shall,*

at the request of any of the parties, *investigate such controversy* and certify to the parties in writing, the name or names of the representatives that have been designated or selected." (Italics supplied.)

It is noticeable that under subd. 2, when a question is raised by an employer concerning the bargaining representative of his employes, it is mandatory that the conciliator proceed with an investigation and determination of the question.

It is important to note that under § 179.06, when a labor organization desires to negotiate a collective bargaining agreement, it is the duty of an employer to bargain with such organization in good faith. However, as a prerequisite to such negotiation, the labor organization must serve upon the employer a written notice of its demand. It is also noticeable that the Minnesota act reserves to the employes the right to select their own bargaining representatives, § 179.10, subd. 1, and by § 179.16, subd. 1, when a majority of the employes of a unit select a representative, the right to represent all the employes in the unit is exclusive to such bargaining agent.

It is an unfair labor practice for an employer to encourage or discourage membership in any labor organization by discrimination in regard to hire, tenure of employment, or any terms or conditions of employment. § 179.12(3).

In this case, no written notice of a demand to negotiate an agreement was served by relator upon respondent. When an individual or organization seeks to induce an employer to sign a contract covering working conditions or to negotiate an agreement covering any of the objects covered by our statute, and the employer questions the right of such individual or organization to represent his employes, a controversy exists that will justify the filing of an application with the conciliator for an investigation. Implicit in the request that the employer enter a contract must be a claim, express or implied, that the individual or organization presenting the contract has authority to speak for a majority of the employes. If that is not true, how can such contract be binding upon either the employer or the employes? When an employer signs a contract, he has a right to know that it will be binding upon his employes as well

as upon himself, and in order to know that he must first know that the bargaining agent represents a majority of his employes. If such bargaining agent does not represent a majority of the employes, it is conceivable that a majority of the employes might select some other individual or organization as their bargaining agent, who, under our law, would then be the exclusive bargaining agent for such employes, and the employer would be bound to recognize such agent as the representative. Under these circumstances, for an employer to compel his employes to join a labor organization by signing a closed-shop contract without their consent or acquiescence and possibly against their desires would not only tend to encourage them to join such organization, but would virtually compel them to do so. This, under our laws, would be an unfair labor practice.

In this case, after the question had been raised by the employer (respondent), relator came before the conciliator and disclaimed that it represented any of respondent's employes. If an election were thereafter held, all that could be determined would be that relator did not represent respondent's employes. The result of the election at best could only be negative. That determination can be made equally as well without an election in view of the position now taken by relator. In view thereof, the authority of the conciliator under the law to proceed with the election no longer exists, for the reason that there is no longer a controversy.

While care must be exercised in using decisions of the National Labor Relations Board as authority in construing our act, for the reason that there are differences in the two acts, the rationale of decisions under the federal act is applicable to cases arising under our act insofar as the provisions of the two acts are similar or the objects or purposes to be attained are the same.

Under the National Labor Relations Act and the Labor Management Relations Act, 1947, questions similar to that here involved have been decided adversely to the contentions of respondent. Matter of Park & Tilford Import Corp. 47 N. L. R. B. 411; Ny-Lint Tool & Mfg. Co. (May 13, 1948) 77 N. L. R. B. 100, 22 LRRM 1061 (one member dissenting). In the case of Louella Balierino (May 18,

1948) 77 N. L. R. B. 122, 22 LRRM 1076, the facts were somewhat similar to those in the instant case. In that case, a local organization of International Ladies' Garment Workers' Union interviewed an officer of the employer with respect to organizing its employes. The union representative requested the employer to sign a contract with the union. The employer refused. Thereafter, the union began picketing the building of the employer, and the employer filed its petition with the National Labor Relations Board for an investigation. At the hearing, the union's representative expressly denied that the union represented a majority of the employes. The board found that it had no jurisdiction to proceed with the hearing, following the Ny-Lint Tool & Mfg. Co. case.

While this question has not come before us heretofore, it seems apparent that under our act, before there can be an investigation or election, there must be a controversy. We do not question the right of the employer to invoke the powers of the conciliator when an individual or organization presents a contract for his signature, as was done in this case, but when it appears to the conciliator that a controversy no longer exists concerning bargaining representatives the right to proceed with the investigation ceases and he can go no further.

■ The third requirement for the issuance of a writ of prohibition is that it must appear that injury will result from the threatened action and that there is no other adequate remedy at law. We held in J. F. Quest Foundry Co. v. Int'l M. & F. W. Union, 216 Minn. 436, 13 N. W. (2d) 32, that an election for the purpose of determining bargaining representatives is not a final order and does not command the employer to do or refrain from doing anything. However, in that case there was a real controversy between two rival unions. The case did not involve the question of jurisdiction presented here.

The question now before us is whether injury will result to relator if an election is held where there is no controversy and where relator makes no claim to represent a majority of respondent's em-

272

ployes. Under our statute, the conciliator, having determined the question of a bargaining representative, may refuse again to consider the matter for a period of one year after certification of a bargaining agent. Relator contends that it will suffer injury to its prestige among other prospective and present members from the publicity which naturally follows an adverse election. We cannot say that this is not true. Relator cannot be compelled to represent respondent's employes and should not be compelled to submit to an election unless it chooses to do so. It is probable that injury is inherent in such proceedings sufficient to warrant the issuance of the writ. There is no other adequate remedy at law that will prevent the harm contemplated by such adverse election without a circuity of action and great delay that will be harmful to both parties.

■ We believe that all three prerequisites for the issuance of a writ of prohibition are present in this proceeding, and that the writ should be and is made absolute.

So ordered.

UPON APPEAL FROM CLERK'S TAXATION OF COSTS.

On February 11, 1949, the following opinion was filed:

PER CURIAM.

This proceeding was brought for a writ of prohibition to restrain the state labor conciliator from holding an election to determine whether relator was the bargaining representative for the employes of Sam Nemo, doing business as Roman Cafe. After our decision that the alternative writ be made absolute, relator taxed costs and disbursements against respondent Sam Nemo. This appeal from such taxation followed.

M. S. A. 587.05 provides that "The court may make and enforce such order concerning costs and disbursements, and the amount thereof, as justice shall require."

It is the contention of respondent Nemo that costs and disbursements cannot be taxed against him because the proceedings for the writ of prohibition were directed against the act or acts of the

labor conciliator, and also for the reason that both parties prevailed as to part of their contentions.

The labor conciliator was acting in a governmental capacity. There being no express statutory provision so declaring, he is not liable for costs and disbursements. State ex rel. Simpson v. Village of Dover, 113 Minn. 452, 130 N. W. 74, 539. The petition for the writ in this case was directed against both Sam Nemo and the labor conciliator. Both appeared and filed briefs. Both presented oral arguments. Under these circumstances, the court could, if justice required it, order costs and disbursements taxed against Sam Nemo.

The original proceeding for an investigation was instituted by respondent Nemo in good faith after relator had sought to procure a contract covering working conditions of respondent's employes. While we held that the labor conciliator lacked jurisdiction to proceed with an election, for the reason that there was no controversy after relator disclaimed any right to represent respondent's employes, we also upheld the contention of respondent that it was an unfair labor practice to sign a contract with a union which did not represent the employes. To this extent both parties prevailed. The questions presented were new and important. Under the circumstances, we believe it is only just that no costs or disbursements be taxed against either party, and it is so ordered.

Authority to issue writs of prohibition rests exclusively with this court under M. S. A. 587.01. Costs and disbursements are not taxable as a matter of right, but only when allowed by the court. § 587.05. Heretofore, the practice has prevailed of having the clerk tax costs and disbursements in favor of the prevailing party without any order of the court. We believe it was the intention of the legislature that the court, in each case, should determine whether costs and disbursements should be allowed, and, if so, in what amount, in whose favor, and against whom they should be taxed. In order more effectively to comply with this statutory provision, the court will henceforth make such determination part of its decision for the guidance of the clerk.