CITY OF MASON CITY, Appellant,

v.

PUBLIC EMPLOYMENT RELATIONS BOARD, Appellee,

and

Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union No. 828, Intervenor-Appellee.

No. 65812.

Supreme Court of Iowa.

March 17, 1982.

Gerald M. Stambaugh and C. W. McManigal, Mason City, for appellant.

Thomas J. Miller, Atty. Gen., Nancy D. Powers, Asst. Atty. Gen., and Susan K. Schreurs, Des Moines, for appellee.

Robert E. Conley of Conley & Conley, Des Moines, for intervenor-appellee.

William F. Sueppel of Meardon, Sueppel, Downer & Hayes, Iowa City, for amicus curiae League of Iowa Municipalities.

**McGIVERIN, Justice.**

Petitioner City of Mason City appeals from a district court judicial review decision holding that the following employee organization proposal was a mandatory subject of bargaining as "insurance" under section 20.-9, The Code:

> The employer shall pay the entire premium for Health and Welfare insurance including dependent coverage for any employee that retires. When the employee becomes eligible for medicare, the employer shall provide a supplemental policy to medicare, and the employer shall pay the entire premium.

Petitioner contends that the proposal pertains to "retirement systems" and, therefore, the proposal must be excluded from the scope of negotiations due to the last sentence of section 20.9. We find this contention meritorious and reverse the ruling of the district court.

The issue in question arose in the course of contract negotiations between petitioner, a "public employer" pursuant to section 20.-3(1), and intervenor, Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union No. 828, an "employee organization" under section 20.3(4). The union represented the police officers of Mason City, "public employee[s]" under section 20.3(3).[1] A dispute arose during the course of negotiations and on January 17, 1979, the fact-finder petitioned the Iowa Public Employment Relations Board (PERB) for a resolution of the dispute over whether the proposal was a mandatory subject of bargaining under section 20.9, The Code. 660 I.A.C. 6.3(2).

> Section 20.9 provides, in pertinent part: The public employer and the employee organization shall meet . . . to negotiate in good faith with respect to wages, hours, vacations, insurance, holidays, leaves of absence, shift differentials, overtime compensation, supplemental pay, seniority, transfer procedures, job classifications, health and safety matters, evaluation procedures, procedures for staff reduction, in-service training and all other matters mutually agreed upon. . . .
>
> All retirement systems shall be excluded from the scope of negotiations.

The PERB rendered a 2–1 decision holding that the proposal was a mandatory subject of bargaining within the meaning of section 20.9.[2] Petitioner sought judicial review of the PERB decision pursuant to section 17A.19, The Code. The district court affirmed the PERB decision, holding that the union proposal did not pertain to "retirement systems" but was a mandatory subject of bargaining within the category of "insurance" under section 20.9. Petitioners appealed.

■ When we review a district court judgment rendered pursuant to section 17A.19, The Code, the sole question is whether the court correctly applied the law. *Marshalltown Education Association v. PERB*, 299 N.W.2d 469, 470 (Iowa 1980). "In order to make that determination, we apply the standards of section 17A.19(8), The Code, to the Board's action to determine whether this court's conclusions are the same as those of the district court." *Id.; Jackson County Public Hospital v. PERB*, 280 N.W.2d 426, 429–30 (Iowa 1979). Under this standard we find that the PERB's decision must be reversed because it was contrary to the statutory provisions of section 20.9. § 17A.19(8)(a), The Code. We disagree with the interpretation of section 20.9 made by the district court and the PERB.

■ We ordinarily start with a two-step analysis in considering whether a proposal is within the scope of mandatory bargaining under section 20.9. The proposal must come within the meaning of one of the subjects listed as mandatory in section 20.9. Secondly, there must be no legal prohibition against bargaining on the particular topic. *Charles City Education Association v. PERB*, 291 N.W.2d 663, 666 (Iowa 1980). Because we believe the second step is determinative here, we turn our consideration directly to it.

---

1. The petitioner's contention that the police are not public employees in the present case because the contract proposal provides for benefits after they retire is without merit. Section 20.3(3) provides: " 'Public employee' means any individual employed by a public employer, except individuals exempted under the provisions of section 20.4." The nature and timing of the benefits to be received does not affect the public employee status of the police officers as of the time of the proposal and negotiation.

2. John E. Beamer, Chairman of the PERB, dissented, finding that the proposed health and welfare insurance payments for retired employees and their dependents constituted a "retirement system" within the meaning of section 20.9 and that the proposal should therefore be excluded from the scope of negotiations.

Our construction of section 20.9 to include the union proposal under the meaning of "all retirement systems," and therefore to exclude the proposal as a subject of bargaining, is controlled by legislative intent. *Eggman v. Scurr*, 311 N.W.2d 77, 78 (Iowa 1981); *Loras College v. Iowa Civil Rights Commission*, 285 N.W.2d 143, 147 (Iowa 1979). We "look to the object to be accomplished, the evils and mischiefs sought to be remedied, or the purpose to be subserved, and place on it a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it." *State v. Johnson*, 216 N.W.2d 335, 337 (Iowa 1974).

We find that the legislative intent underlying the last sentence of section 20.9 was to exclude from negotiations under chapter 20 any proposal that directly augments or supplements the benefits a public employee would receive under a retirement system under other provisions of the Code. City policemen are already entitled to pension benefits under chapters 410 and 411, uniform statewide retirement systems. To find that the union proposal in the present case is not included within the scope of a "retirement system" would ignore and work to defeat a strong public policy underlying uniform retirement systems and pensions for public employees in this state.

Legislation regarding pensions for persons who work for the state government or its various subdivisions includes chapter 97 (old-age and survivors' insurance system), chapter 97A (public safety peace officers' retirement, accident and disability system), chapter 97B (Iowa public employees' retirement system), chapter 410 (disabled and retired firemen and policemen), chapter 411 (retirement systems for policemen and firemen), and chapter 605A (judicial retirement system).

There appear to be several public policies behind this Iowa pension scheme.

The purpose of this chapter is to promote economy and efficiency in the public service by providing an orderly means whereby employees who become superannuated may, without hardship or prejudice, be replaced by more capable employees, and to that end providing a retirement system which will provide for the payment of annuities to public employees, thereby enabling the employees to care for themselves in retirement, and which by its provisions will improve public employment within the state, reduce excessive personnel turnover and offer suitable attraction to high-grade men and women to enter public service in the state.

§ 97B.2, The Code. *See also* § 97A.2 (to provide retirement and other benefits to peace officers or their dependents).

Similarly, there appear to be several reasons for excluding retirement pensions and systems from the scope of collective bargaining and negotiation. First, the exclusion is intended to help "government employers hold down the spiraling cost of pension benefits." *Village of Lynbrook v. New York State PERB*, 48 N.Y.2d 398, 404, 399 N.E.2d 55, 57, 423 N.Y.S.2d 466, 468 (1979). Second, it is felt that significant matters of governmental policy, which pensions would seem to be from sheer cost alone, should remain outside the scope of negotiation so that citizen participation will not be precluded. *See Paterson Police PBA v. Paterson*, 87 N.J. 78, 92–93, 432 A.2d 847, 854–55 (1981) ("collective negotiations cannot be permitted to defeat the public's right to participate in the making of governmental policy, or to bypass the predominant duty of public employers to promote the public welfare"). Third, to allow individual police employee organizations to bargain over proposals such as the one in this case would mean that policemen in various cities would have wholly disparate benefits upon retirement based upon the skill and success of their bargaining representatives. *See Laborers' International Union of North America, Local 1029 v. State Department of Health and `Social Services*, 310 A.2d 664, 667 (Del.Ch.1973). This would defeat the intent of the legislature to have an all-inclusive, uniform plan in dealing with retirement benefits for public employees, including policemen. This intent is evidenced by the mandatory membership provisions of

the various systems, and the detailed provisions relating to "contributions, benefits, administration, eligibility credits, funding and supervision." *Pennsylvania State Education Association v. Baldwin Whitehall School District*, 30 Pa.Commw. 149, 162, 372 A.2d 960, 966 (1977) (Mencer, J., dissenting).

These policies underlying the section 20.9 exclusion were succinctly stated in Note, *The Scope of Negotiations Under the Iowa Public Employment Relations Act*, 63 Iowa L.Rev. 649, 687 (1978):

> The alternative system pension exclusion . . . appears to be a justifiable limit upon the scope of negotiations. Scope limiters have raised the concern that problems will arise because this type of monetary issue is not appropriate for collective negotiations. The delayed effect of the costs imposed by concessions to large pension demands has been seen, by scope limiters, as making such concessions politically attractive to public sector management, in contrast to the immediate costs imposed by concessions to demands in the area of wages and salaries. Because it is felt that public employers will have great difficulty in resisting pension demands, it has been suggested that the issue be excluded from bargaining. Although the view is not without opponents, the argument appears persuasive. Long-range policy choices concerning the necessity of pension plans and desirable funding levels are quite possibly best left to a legislature that can better ensure efficient operation and necessary financing. Uniformity of treatment for all public employees is also desirable and a consequence that helps justify the exclusion.

(Footnotes omitted).[3] Because the proposal at issue in the present case conflicts with the policy of the section 20.9 exclusion, we conclude that the legislature intended such piecemeal pension benefit proposals be legally excluded as subjects of negotiation under chapter 20.

Other jurisdictions have addressed this issue in similar and related factual contexts. For example, in *Grottenthaler v. Commonwealth of Pennsylvania, Pennsylvania State Police*, 40 Pa.Commw. 165, 166, 398 A.2d 220, 221 (1979), *rev'd* 488 Pa. 19, 27, 410 A.2d 806, 810 (1980),[4] the widow of a deceased state trooper sought relief in the nature of a writ of mandamus against the Commonwealth. She sought to compel the payment of non-service disability and death benefits conferred by an arbitration award and collective bargaining agreement between the Commonwealth and the Trooper's union. *Id.*, 398 A.2d at 221. After the award had been made in 1973, but before it became effective, the Commonwealth had enacted a statute providing: "Pension rights of State employees shall be determined solely by this part or any amendment thereto, and no collective bargaining agreement shall be construed to change any of the provisions herein." *Id.* at 168, 398 A.2d at 222; 71 Pa.S.C.A. § 5955.[5] The court found that disability and survivor benefits were no longer legal bargaining topics at the time her claim matured and dismissed

---

**3.** For a discussion of "scope limiters" and their ideological adversaries, "private sector model advocates", see *Charles City Community School District v. Public Employment Relations Board*, 275 N.W.2d 766, 769–70 (Iowa 1979); Note, *The Scope of Negotiations Under the Iowa Public Employment Relations Act*, 63 Iowa L.Rev. 649, 653–67 (1978).

**4.** Mrs. Grottenthaler's action was reinstated by the Supreme Court of Pennsylvania in *Grottenhaler v. Pennsylvania State Police*, 488 Pa. 19, 24–27, 410 A.2d 806, 809–10 (1980). The court found that although the survivor-disability payments that Mrs. Grottenhaler sought were illegal subjects of bargaining after the enactment of 71 Pa.S.C.A. § 5955, because the Commonwealth had, after bargaining, entered into a contract providing such disability payments, it was estopped from asserting any invalidity based on the section 5955 exclusion. Here the City of Mason City is resisting bargaining on what it believes to be a subject excluded from the scope of bargaining.

**5.** Similar in effect to the Pennsylvania statute is section 20.28, The Code, which provides in part: "A provision of the Code which is inconsistent with any term or condition of a collective bargaining agreement which is made final under this chapter shall supersede the term or condition of the collective bargaining agreement unless otherwise provided by the general assembly."

her petition. *Id.* at 169–70, 398 A.2d at 223. *See also Group Insurance Commission v. Labor Relations Commission,* 8 Mass.App. 753, 397 N.E.2d 335, 338–39 (1979) (schedule of recoupment of group insurance premiums not within scope of public employee bargaining), *rev'd on other grounds,* 381 Mass. 199, 408 N.E.2d 851, 857 (Mass.1980).

We adopt the following approach in this case: "[W]here there is uncertainty as to areas where the General Assembly had indicated a clear intention to deny collective bargaining, any doubt should be resolved in favor of the [pension system] [and against collective bargaining]. The [pension system] has been instituted to create a uniformity of protection and treatment for public employees." *Laborers' International Union of North America, Local 1029 v. State Department of Health and Social Services,* 310 A.2d 664, 667 (Del.Ch.1973). This approach is especially appropriate where a statewide pension system for a group of public employees is already specifically provided for as is true here for these police officers under chapters 410 and 411.

The section 20.9 exclusion of "all retirement systems" from the scope of negotiations should have been applied by the district court and the PERB to the union proposal in this case. The benefit proposal directly pertains to "retirement systems" and is a legally excluded subject of bargaining. The ruling of the district court is reversed.

REVERSED.

All Justices concur except HARRIS, McCORMICK, and LARSON, JJ., who dissent.

HARRIS, Justice (dissenting).

The question is whether an employee organization's insurance proposal is to be considered a retirement system proposal. According to section 20.9, The Code, "[a]ll retirement systems shall be excluded from the scope of negotiations." If the proposal here is not excluded under this provision it is a mandatory subject of bargaining because it is plainly one involving insurance.

According to the rubric "[i]n construing statutes the court searches for the legislative intent as shown by what the legislature said, rather than what it should or might have said." Iowa R.App.P. 14(f)(13). The legislature could have proscribed bargaining over retirement *benefits*; the majority obviously believes it should have. The difficulty is that the legislature did not proscribe what the majority does. In the belief that it makes better sense the majority strikes from the statute the term "retirement systems" and substitutes therefor the term "retirement benefits." This violates our rubric of statutory construction, quoted above.

As noted by the majority the legislature has set up a number of retirement systems. *See* chapter 97, The Code (old age and survivors' insurance system); chapter 97A, The Code (public safety peace officers' retirement, accident, and disability system); chapter 97B, The Code (Iowa public employees' retirement system). A retirement system, as envisioned by the legislature, calls for comprehensive plans for funding and sets up complex systems of benefits. The proposal here, a mere retirement benefit, falls far short of qualifying as a retirement *system* as understood by the legislature.

In seeking a reversal the city argues against the PERB determination by suggesting the employees here could circumvent the proscription against bargaining proposals on a piecemeal basis. The city raises the specter of a myriad of individual proposals which collectively would constitute a comprehensive retirement system. On this record there is no basis for such fear. We know only of the individual proposal. No pensions or other benefits are involved. We have no basis for believing this proposal might be a part of a scheme to propose a comprehensive retirement system.

I would affirm.

McCORMICK and LARSON, JJ., join this dissent.