**MINNESOTA TEAMSTERS PUBLIC AND LAW ENFORCEMENT EMPLOYEES UNION, LOCAL NO. 320,**
Appellant,

v.

**COUNTY OF WASHINGTON,**
Respondent.

No. CX–87–823.

Court of Appeals of Minnesota.

Oct. 6, 1987.
Review Granted Dec. 18, 1987.

Gary W. Bastian, Minneapolis, for appellant.

Peter D. Bergstrom, St. Paul, for respondent.

Thomas L. Grundoefer, St. Paul, for amicus curiae League of Minnesota Cities.

Margaret J. Flicker, St. Paul, for amicus curiae Ass'n of Minnesota Counties.

Gregg M. Corwin, St. Louis Park, for amicus curiae AFSCME Minnesota Councils.

Heard, considered and decided by LANSING, P.J., and CRIPPEN and MULALLY,* JJ.

**OPINION**

MULALLY, Judge.

This appeal from summary judgment challenges the trial court's determination that, as a matter of law, the topic of health insurance benefits for retired public employees is excluded from the scope of collective bargaining under the Minnesota Public Employment Labor Relations Act (PELRA). We affirm.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## FACTS

Appellant Minnesota Teamsters Public and Law Enforcement Employees Union, Local No. 320 (Union) is the exclusive representative for essential employees and probation officers employed by respondent County of Washington (County). For several years in the past, the County provided medical and hospitalization insurance coverage for both current and retired union employees. As applied to the retired employees, the insurance was not a part of the collective bargaining agreements negotiated by the County and the Union.

In 1985, the County modified and limited its past practice of providing health insurance for retired employees. The Union demanded negotiation over the issue, which the County refused. The Union then brought this action, asking for a declaratory judgment that medical insurance for retired employees is a mandatory subject of bargaining under PELRA, as a "term and condition of employment." On cross-motions for summary judgment, the trial court denied the Union's motion, concluding that "health insurance benefits for retired persons is a non-negotiable item for collective bargaining."

## ISSUE

Do insurance benefits for retired public employees constitute "retirement contributions or benefits"?

## ANALYSIS

Under PELRA, the public employer and the employees' exclusive representative have a mutual obligation to meet and negotiate in good faith over "terms and conditions of employment." Minn.Stat. § 179A.07, subd. 2 (1986). The statute defines "terms and conditions of employment" as "the hours of employment, the compensation therefor including fringe benefits *except retirement contributions or benefits,* and the employer's personnel policies affecting the working conditions of the employees." *Id.* § 179A.03, subd. 19 (emphasis added).

The Minnesota Supreme Court has previously determined that the express exclusion of "retirement contributions or benefits" demonstrates a legislative intent "to remove pension issues from the scope of permissible bargaining." *AFSCME Councils 6, 14, 65 and 96, AFL–CIO v. Sundquist,* 338 N.W.2d 560, 576 (Minn.1983) (citing 1973 Minn. Laws ch. 635, § 6)). However, the *AFSCME* case involved only pension contributions. *Id.* at 564 (union challenged statute that increased public employees' existing contributions to pension funds by 2%). Thus, although the supreme court made broad references to "all pension issues," it did not have occasion to consider whether health insurance for retired employees is a pension issue.

In discussing legislative intent, the supreme court in *AFSCME* quoted the author of the 1973 amendment: " 'The purpose of the amendment is to take the negotiation of pension benefits out of the bill and preserve the present situation with regard to pension benefits and that is to keep them within the realm of the legislature.' " *Id.* at 576 (quoting Statement of Rep. Donald Moe, House Committee on Governmental Operations, (March 13, 1973)). The court also cited Moe's explanation that "the exclusion was necessary to prevent the decentralized and discordant administration of public pensions, and to maintain legislative discretion over significant matters of budgetary policy." *Id.* Appellant, however, argues that these concerns for cost, uniformity of benefit packages, and legislative control do not extend to health insurance for retired employees, which is nothing more than "a continuation of a fringe benefit that applies to all workers," and which is provided through private insurance carriers, not the legislature.

Respondent cites *AFSCME* and statements made in 1987 by now-Senator Moe, arguing that these statements support the trial court's ruling and the extension of *AFSCME* to health insurance for retired employees. In committee hearings on a bill that would amend the definition of "retirement contributions or benefits," Senator Moe stated that the intent in 1973 had been "to exclude from consideration any retirement benefit." Statement of Sen. Donald

Moe, Senate Committee on Government Operations, (April 28, 1987). Referring to the present case, Senator Moe stated that "in my opinion, the Washington County decision was appropriate." *Id.*

The amendment proposed in 1987 would change the statute so that, in the future, "retirement contributions or benefits" *would not* include "insurance benefits paid for by public employers on behalf of retired employees up to age 65." H.F. 257, 75th Sess. at 1 (Minn.1987). Thus, such insurance benefits would constitute a term or condition of employment and would be subject to collective bargaining. Although both legislative chambers passed the bill during the 1986–87 session, the senate and house bills differed, and the legislature adjourned without taking final action on the bill. Thus, whether the trial court's decision in this case will be legislatively overruled is still an open question.

The parties argue the importance of an earlier Washington County case, decided in March 1984, and involving the City of Stillwater against appellant and AFSCME, Local # 517, on the issue of whether medical benefits for retired employees is a negotiable item. There, the court concluded that the supreme court's decision in *AFSCME* did not specifically address the issue, and that *AFSCME*'s holding that "pension" benefits are excluded from bargaining did not compel a finding that medical/hospital benefits are precluded. In support, the court cited *Incorporated Village of Lynbrook v. New York State Public Employment Relations Board*, 48 N.Y.2d 398, 423 N.Y.S.2d 466, 399 N.E.2d 55 (1979).

The trial court in the present case distinguished *Lynbrook*, on the grounds that the New York court was applying a definition involving the negotiation of insurance benefits for dependents of employees both before and after retirement, while this case involves benefits solely for retired employees. The court also noted that the New York court stated that the legislative history provided little guidance, while here there is significant legislative history.

The trial court instead supported its conclusion by citing *AFSCME* and the supreme court's reliance in *AFSCME* on a 1982 Iowa case. *See City of Mason City v. Public Employment Relations Board*, 316 N.W.2d 851 (Iowa 1982). In that case, the relevant statute excluded "all retirement systems" from the scope of collective bargaining. *Id.* at 853. When the union proposed health insurance for retired employees as a mandatory topic of negotiation, the Iowa Supreme Court held that the statute excluded from negotiations "any proposal that directly augments or supplements the benefits a public employee would receive under a retirement system under the other provisions of the [Iowa statutes]." *Id.* at 854. The court concluded that any other interpretation "would ignore and work to defeat a strong public policy underlying uniform retirement systems and pensions for public employees in this state." *Id.* Similarly, the Minnesota Supreme Court in *AFSCME* identified policy considerations that support the prohibition against negotiations concerning pension systems. *See AFSCME*, 338 N.W.2d at 576 (citing the need to permit employers to contain the rising cost of pension benefits, the importance of legislative participation in the making of significant government policy, and the promotion of uniformity and the prevention of the existence of disparate benefits between different funds based upon the skill and success of employees' bargaining representatives).

We conclude the trial court properly determined that the statute in its present form excludes health insurance benefits for retired persons from the scope of collective bargaining in the public sector. We reach this conclusion because the evidence on legislative intent demonstrates the purpose of excluding all retirement benefits from the scope of collective bargaining, and because the plain language of the statute reasonably supports the trial court's interpretation of the meaning of "retirement contributions and benefits." We also observe that the statute, bargaining proposal, and standard of review in the *Lynbrook* case were significantly different from those in this case, and we hold that in making its

determination, the trial court appropriately distinguished *Lynbrook.* In our opinion the trial court properly applied the statute consistent with its language and present legislative intent.

## DECISION

Affirmed.

CRIPPEN, J., dissents.

CRIPPEN, Judge, dissenting.

I respectfully dissent. Under PELRA, fringe benefits must be negotiated by public employers, but "retirement contributions or benefits" may not be negotiated. The trial court's decision rests on the view that the legislature has used "encompassing language" in its declaration about retirement contributions and benefits, words that cover all benefits enjoyed upon retirement.

There is no disagreement that the exclusion at issue is equivocal. It may be read as suggested by the trial court. On the other hand, it is reasonable to view the topic of retirement contributions or benefits as one confined to the matter of pension plans, contributions to pension funds, and pension entitlements. Our task is to identify the "common and approved usage" of the legislature's words, and any "special meaning" acquired by technical words and phrases. Minn. Stat. § 645.08(1) (1986). Because the words are reasonably open to two interpretations, we are free to consider the purpose of the law and the effects of particular interpretations. Minn. Stat. § 645.16 (1986).

I acknowledge several considerations favoring the broad interpretation adopted by the trial court. Concern for public pension costs extends to all benefits after retirement. The legislature has prescribed the appropriate manner and form of contracting for public employee health insurance benefits, and there may be advantages in a uniform state law on post-retirement health insurance benefits for public employees. The Iowa Supreme Court in 1982 decided that public employment collective bargaining was inappropriate for pensions and other benefits after retirement. This year, a Minnesota state senator endorsed the trial court's decision in this case, claiming an original legislative intent to bar negotiation on all benefits after retirement. Although these considerations get due attention, in my opinion there are numerous and compelling reasons to reach a different result.

1. Both in common usage and in a technical sense, retirement plans for employees are arrangements for pension or annuity payments after retirement. *See e.g.,* 42 U.S.C.A. § 418(b)(4) (West Supp. 1987) (a state or local public employee retirement system "means a pension, annuity, retirement, or similar fund or system").

2. The Iowa Supreme Court dealt with a statute excluding from collective bargaining the subjects of "all retirement systems." *See City of Mason City v. Public Employment Relations Board,* 316 N.W.2d 851, 854 (Iowa 1982). In contrast, PELRA deals with a less expansive topic of retirement contributions and benefits.

3. The Minnesota statute is distinctive because of its reference to contributions as well as benefits. If a reference to retirement benefits might invite an encompassing interpretation, the reference to contributions more commonly suggests the contributions of an employer and an employee for a pension plan.

4. The Minnesota state senator's observations as a legislator in 1973 are more persuasive than his reflections 14 years later. Representative Moe said in 1973 that the exclusion was meant to "take the negotiation of pension benefits" out of collective bargaining. *AFSME Councils 6, 14, 65 and 96 v. Sundquist,* 338 N.W.2d 560, 576 (Minn.1983).

5. When examining this exclusion in 1983, the Minnesota Supreme Court repeatedly observed that its subject was one of public pensions. *Id.* at 575–76. "Public pension issues," the court said, "are not subjects which may be collectively bargained." *Id.* at 576. *See also id.* at 575 n. 4.

6. The pension exclusion is aimed at promoting uniformity of benefits for all public employees. *Id.* at 576 (citing *City of*

*Mason City*, 316 N.W.2d at 854). Representative Moe observed in 1973 that the exclusion was needed to prevent decentralized and discordant administration of public pensions. *Sundquist*, 338 N.W.2d at 576. Although the legislature has enacted a uniform public employee pension program, it has not chosen to adopt a uniform plan for health insurance benefits for retired public employees. The insurance topic is left subject to local government control. Minn. Stat. §§ 471.616 and 471.617 (1986). 1987 legislation provides for a state administered health insurance plan, but the act does not establish uniformity; participation is optional for local employee groups. Minn. Stat. § 43A.316, as enacted by 1987 Minn. Laws ch. 404, § 89; Minn. Stat. § 43A.316, subd. 5.

7. In addition to the legislative purpose for uniformity of pension benefits, the supreme court has recognized legislative aims for preserving to itself the determination of these benefits, and the particular aim to maintain control over costs. *Sundquist*, 338 N.W.2d at 576. Representative Moe agreed in 1973 that the pension exclusion was designed to preserve and maintain the role of the legislature in determining benefits. *Id.* In its 1987 enactment, the legislature specifically provided that the cost of employee participation after retirement in a state administered health insurance plan is a subject for collective bargaining between the employee and the local public employer. Minn. Stat. § 43A.316, subd. 7. The legislature has shown no will to dominate the subject of health insurance benefits for retired public employees.

8. Iowa's broad interpretation of an exclusion from collective bargaining for public employees is compelled by the unique view in that state that the provisions for mandatory negotiations are to be narrowly construed. *See City of Mason City*, 316 N.W.2d at 856; *Charles City Community School District v. Public Employment Relations Board*, 275 N.W.2d 766, 773 (Iowa 1979). In contrast, the Minnesota Supreme Court has observed that the scope of mandatory negotiation must be broadly construed because of the purpose in PELRA to resolve public labor disputes through nego-

tiation. *International Brotherhood of Teamsters v. City of Minneapolis*, 302 Minn. 410, 415, 225 N.W.2d 254, 257 (1975).

In 1984, another trial judge in Minnesota's 10th Judicial District determined that the arguments advanced in *Sundquist* for a pension benefit exclusion did not support extension of the statute to health insurance benefits after retirement. *City of Stillwater v. Minnesota Teamsters Local No. 320, Local No. 517*, No. 53809 (Washington County Dist. Ct. Feb. 8, 1984). For the many reasons cited here, I believe that judgment was correct. An analysis of these numerous considerations should lead us to reverse the decision of the trial court in this case.