**LAW ENFORCEMENT LABOR SERVICES, INC., et al., Appellants,**

v.

**COUNTY OF MOWER, et al., Respondents.**

No. C9–90–2329.

Court of Appeals of Minnesota.

May 7, 1991.

Review Granted July 24, 1991.

See *State v. Schwartz,* 447 N.W.2d 422, 428 (Minn.1989) (collecting cases).

Gregg M. Corwin, Linda M. Nelson and Karin Peterson, Gregg M. Corwin & Associates, St. Louis Park, for appellants.

Richard A. Beens and Scott M. Lepak, Barna, Guzy & Steffen, Anoka, for respondents.

Considered and decided by FORSBERG, P.J., and CRIPPEN and MULALLY,* JJ.

## OPINION

CRIPPEN, Judge.

In its collective bargaining agreement with essential employees, represented by appellant Law Enforcement Labor Services (LELS), respondent Mower County promised retiree health insurance benefits. LELS contends the trial court erred in its determination that respondent may unilaterally change these contract terms once impasse on the subject is reached during contract negotiations.

Respondents, the county and its commissioners, seek review of the trial court's further determination that under the collective bargaining contract at issue the rights to full payment of health insurance premiums vested upon retirement and cannot be altered without the retiree's express consent.

We affirm as to the vesting of health insurance benefits upon retirement under these contracts. We reverse the trial court's determination that the employer has a right to make unilateral changes in

---

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment

pursuant to Minn. Const. art. VI, § 2.

retirement benefit terms for essential employees upon impasse.

## FACTS

Appellant LELS is a union certified as the exclusive representative for full-time, nonprobationary deputy sheriffs in the Mower County Sheriff's Department. Appellant Lowell R. Baker is a retired member of the same bargaining unit. The County is a public employer and the relationship between the parties is governed by the Minnesota Public Employment Labor Relations Act (PELRA). Minn.Stat. §§ 179A.01–179A.25 (1990).

LELS entered into a series of collective bargaining agreements with the County covering this bargaining unit. Since 1981, these contracts have included Article X, providing that retired employees are entitled to continue as members of certain health insurance plans. Article X also stipulates the cost of continuing insurance will be paid by the County.

The parties agree Baker has standing in the present suit because he retired due to job-related injuries after fourteen years of service. The parties also stipulated three other retirees have been receiving the benefits of Article X since their retirement and are entitled to any relief granted by the court to Baker.

The parties' last collective bargaining agreement, which expired by its express terms on December 31, 1988, provided for a year-to-year continuation but permitted reopening of the contract for negotiation upon notice given at least 60 days prior to the termination date of the contract. In February 1989 the appellant union gave notice to reopen the contract. At the same time, the union also requested negotiation over the successor 1990 contract. Although the county subsequently claimed appellant's notice was too late to permit disturbing the contract during 1989, the parties commenced negotiations in March 1989 on contract terms for 1989 and subsequent years.

During negotiations the County proposed to alter Article X to require that retirees contribute a portion of the dependent health insurance premium. While negotiations were still in progress, respondent Mower County Board of Commissioners passed a motion adopting the same proposal.

In July 1989, LELS notified the Bureau of Mediation Services that impasse had been reached and requested interest arbitration on 13 matters, including Article X. The County agreed impasse had been reached. Sometime prior to December 11, 1989, respondents announced the changes concerning retiree health care premiums would be implemented effective January 1, 1990. Appellants brought this action to enjoin respondents from unilaterally implementing the proposed changes.

On July 31, 1990, the trial court issued a permanent injunction in favor of the retirees, holding that the right to full payment of health insurance benefits vested upon retirement and no change could be made to those terms without the individual retiree's express consent. The trial court denied a permanent injunction in respect to a prospective contract change, holding that once the parties reached impasse, the terms of the contract were no longer in effect and respondents had the right to unilaterally implement their proposal regarding retiree health benefits.

## ISSUES

1. Were respondents entitled to unilaterally implement their final offer to the union on health insurance premiums for future retirees?

2. Could the County change its contribution toward health insurance premiums for those who have already retired?

## ANALYSIS

The case must be determined by interpreting provisions of PELRA. When the trial court applies the language of a statute to the facts of a case, the court decides questions of law. *Nhep v. Roisen,* 446 N.W.2d 425, 426 (Minn.App.1989), *pet. for rev. denied* (Minn. Dec. 1, 1989). This court is not bound by the trial court's decisions on questions of law. *A.J. Chromy*

*Constr. Co. v. Commercial Mechanical Serv., Inc.,* 260 N.W.2d 579, 582 (Minn. 1977).

1.

■ Negotiation over payment of retiree health insurance premiums under PELRA is beset with anomalies. Fundamentally, the issue of payment of such premiums is a mandatory term and condition of employment over which parties must meet and negotiate. Minn.Stat. §§ 179A.03, subd. 19 and 179A.07, subd. 2(a) (1990). However, under current statute, failure to reach agreement on the issue is not subject to interest arbitration. Minn.Stat. § 179A.16, subd. 9 (1990). Also, *"subject to section 179A.20, subdivision 6,"* a contract may not obligate an employer to fund the cost of health care benefits for a former employee beyond the duration of the contract. Minn.Stat. § 179A.20, subd. 2a (1990) (emphasis added). Subdivision 6 is the "contract in effect" provision of PELRA; it provides:

> During the period after contract expiration and prior to the date when the right to strike matures, and for an additional time if the parties agree, the terms of an existing contract shall continue in effect and shall be enforceable upon both parties.

Minn.Stat. § 179A.20, subd. 6 (1990).

■ An analysis of section 179A.20, subd. 6, is one of the primary tasks in applying these provisions. Essential employees, such as the deputy sheriffs represented by appellant, may not strike. Minn. Stat. § 179A.18, subd. 1 (1990). Rather, at impasse, all disputed matters must be submitted to binding interest arbitration. Minn.Stat. § 179A.16, subd. 2 (1990). Under section 179A.20, subd. 6, contract rights remain intact until "the right to strike matures." Because essential employees may not strike and therefore the right to strike never matures, it remains to be decided how long the terms of an existing contract for these employees remain in force after contract expiration. When terms of a statute are not clear, the courts may examine the "object to be attained" to

determine their meaning. Minn.Stat. § 645.16 (1990). We observe that binding interest arbitration is the safeguard given to essential employees to parallel the right to strike as a means to protect benefits extended to nonessential employees. It follows, in applying subdivision 6 to contracts with essential employees, that terms at impasse remain in effect until arbitration over a new contract is complete.

When the 1988 legislature amended PELRA to exclude from interest arbitration the topic of retiree health insurance premiums, the amendment did not expressly or implicitly provide that an employer could, upon impasse, unilaterally eliminate or change provisions relating to retiree health insurance premiums. *See* 1988 Minn.Laws ch. 605, § 6 (codified at Minn.Stat. § 179A.16, subd. 9 (1990)). Under Minn.Stat. § 179A.03, subd. 19, these provisions are a term or condition of employment. Our declaration of such a power would also conflict with the overriding aim under PELRA to protect the interests of public employees along with those of their employers and the public at large, and to promote orderly public employment relationships. *See* Minn.Stat. § 179A.01 (1990). More specifically, if we were to find the amendment did allow unilateral contract modification, the contract in effect provision would be meaningless. Whenever possible the language of a statute must be interpreted to give effect to all of its provisions. Minn.Stat. § 645.16.

Absent express language by the legislature that section 179A.16, subd. 9 terminates existing contractual provisions and allows unilateral change in contract terms of essential employees, we conclude the section must be applied only when bargaining has reached impasse on the subject of first time proposals for terms relating to the payment of retiree health insurance benefits. Under this section, if an attempt has been made to bargain over retiree health insurance for the first time, reaching impasse on the issue allows the employer to take any unilateral action it wishes on the term. In contrast, no legislative intent is found to modify Minn.Stat. § 179A.20, subd. 6 insofar as it provides for a continu-

ing contract with essential employees. Interest arbitration remains the only means to determine conflicts on existing contractual terms dealing with retiree health insurance premiums.

Our construction of conflicting statutory language is further supported by the fact that the legislature has expressly declared retiree insurance benefits are a term and condition of employment and thus subject to mandatory bargaining. Minn.Stat. § 179A.03, subd. 19. Moreover, it is important that it was the 1988 Legislature that stated this overall principle as part of the enactment including other conflicting language reviewed here. 1988 Minn.Laws ch. 605, § 4.

Finally, it is important that the 1988 provision limiting health care premium benefits to the term of the contract expressly excepts the contract in effect provision of section 179A.20, subd. 6, highlighting the legislature's aim to protect fully continuing contract rights. *See* 1988 Minn.Laws ch. 605, § 7 (codified at Minn.Stat. § 179A.20, subd. 2a (1990)). Equally important is the clear choice of the 1988 Legislature to validate retirement benefit contracts concluded before Minnesota's law permitted provisions of this kind. 1988 Minn.Laws ch. 605, § 13 (discussed below).

### 2.

■ Baker retired from the Mower County Sheriff's Department in May 1983, when the 1983–84 contract between appellant and the County was in force. Article X of that contract, and all later contracts through 1988, read, in part, as follows:

Section B. Retirement benefits shall be available to any employee who retires upon attaining age fifty-five (55) with at least ten years of service in accordance with the following schedule:

1. Any such retired employee shall be allowed to continue as a member of the applicable group hospitalization, surgical and major medical plan insurance until his death and thereafter his dependents may continue with the group for one (1) year upon paying the premium monthly in advance therefor.

2. Any employee who retires with thirty (30) years of service after attaining age fifty-five (55) shall have the group hospitalization costs paid by the County.

3. Any employee who retires with twenty (20) years of service after attaining age sixty (60) shall have the group hospitalization costs paid by the County.

4. Any employee who retires with fifteen (15) years of service after attaining the age of sixty-two (62) shall have the group hospitalization paid by the County.

5. Any employee who retires with ten (10) years of service after attaining age sixty-five (65) shall have the group hospitalization costs paid by the County.

Section C. Any employee who qualifies for disability benefits as a member of the Police and Fire Fund with at least five (5) years of service shall be eligible for retirement benefits as though he had attained the age of sixty-five (65) with ten (10) years of service at the date of eligibility for disability benefits under the applicable provisions of the Public Employees Retirement Law.

The trial court determined that under Article X those employees who retired under these contracts had a contractual right, vesting upon retirement, to have group hospitalization costs paid by respondent. We agree.

The trial court cited compelling authority that promissory estoppel prevents an employer from withdrawing its payment of benefits without the consent of the retiree. The Minnesota Supreme Court has held public employees become entitled to their pension benefits at the time of retirement and their employers are estopped from denying a promise had been made to provide those benefits. *Christensen v. Minneapolis Mun. Employees Retirement Bd.*, 331 N.W.2d 740, 749–50 (Minn.1983). Retirees' health insurance benefits are part of their retirement packages. Baker's right to group hospitalization payments also can

be characterized in terms of promissory estoppel.

To recover under the theory of promissory estoppel, the retirees must show there was a promise on which the County should reasonably have expected them to rely and on which they actually relied to their detriment. Restatement (Second) of Contracts § 90 (1981). They must also show that enforcement of the promise is the only means of avoiding injustice. *See id.; Northern ·Petrochemical Co. v. United States Fire Ins. Co.,* 277 N.W.2d 408, 410 (Minn.1979).

The County promised each retiree, in the contract covering the employee when retirement occurred, that it would pay the cost of health insurance premiums "until his death." The County continued to make the same promise in each successive contract with the union. The County reasonably would have anticipated the retirees would rely on that benefit even though the contract under which they retired was no longer in effect and the retiree was no longer employed by the County.

Although Baker did not testify about the extent of his reliance on Article X, another retiree, who was stipulated as being in the same position as Baker, testified that because of his reliance on Article X he did not purchase other health insurance after his retirement and it would be difficult for him to obtain other health insurance coverage at his age. It is reasonable to infer that each retiree would be in a similar position.

Respondents contend the trial court misconstrued the promise made in Article X. They argue the language of the provision promises only that a retiree will be able to continue being insured under the terms of the group insurance policy until his death and not that the County is required to pay the retiree's insurance premium until his death. Although respondents are correct that the phrase "until his death" appears only in Article X, § B(1) (providing membership of retirees in insured group) and not Article X, §§ B(2)–B(5) (payment of insurance costs), which provide for payments by the County of the costs of the premiums for the group hospitalization policy, section B must be taken as a whole and, as such, it promises coverage and payment of costs.

Respondents further argue that even if the contract language promises the County would pay the retirees' premiums for life, that language may be altered unilaterally as to retirees in future collective bargaining contracts. They point to *Allied Chemical & Alkali Workers, Local No. 1 v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971), in which the United States Supreme Court held that under the National Labor Relations Act (NLRA) retiree benefits are not a mandatory subject of bargaining. *Id.* at 182, 92 S.Ct. at 399. Therefore, a unilateral change in benefits for those already retired was not an unfair labor practice. *Id.* at 185, 92 S.Ct. at 400.

Although PELRA is modeled on the NLRA, it is not identical. Because there are differences between the two acts,

> the rationale of decisions under the federal act is applicable to cases arising under our act insofar as the provisions of the two acts are similar or the objects or purposes to be attained are the same.

*Nemo v. Local Joint Executive Bd.,* 227 Minn. 263, 270, 35 N.W.2d 337, 342 (1948) (analyzing relationship between NLRA and PELRA's predecessor statute). Under PELRA, "employer payment of, or contributions to, premiums for group insurance coverage of retired employees" are terms and conditions of employment. Minn.Stat. § 179A.03, subd. 19 (1990). As such, they are subject to mandatory bargaining. Minn.Stat. § 179A.07, subd. 2(a) (1990). The rationale behind the *Pittsburgh Plate Glass Co.* decision is not relevant to the question whether, under Minnesota law, employers unilaterally may change the benefits given to current retirees.

Respondents also argue that under 1988 revisions to PELRA, retirees are not entitled to those benefits beyond the duration of the contract under which they retired.

Prior to August 1, 1986, collective bargaining over medical insurance benefits for retired persons was not permitted. *See Minnesota Teamsters, Local No. 320 v. Washington County,* 413 N.W.2d 245, 247

(Minn.App.1987) (interpreting Minn.Stat. § 179A.07, subd. 2 (1986)), *pet for rev. granted* (Minn. Dec. 18, 1987), *appeal dismissed* (Minn. April 29, 1988). Therefore, Article X in the parties' contracts prior to August 1, 1986 was invalid under Minn. Stat. § 179A.20, subd. 2(1) (1986) and Article XVI of those contracts, both of which provide that no contract term can be in conflict with the laws of Minnesota.

In response to the *Washington County* decision, the 1988 Legislature validated contract terms in effect "before the effective date of this section" providing for employer payment of the costs of health care insurance for retired employees. 1988 Minn.Laws ch. 605, § 13. The "effective date" of section 13 was made retroactive to August 1, 1986. 1988 Minn.Laws ch. 605, § 15. This provision validates Article X of those contracts in effect prior to August 1, 1986.

Respondent argues section 13 specifically states that the section is subject to 1988 Minn.Law ch. 605, § 7, now codified at Minn.Stat. § 179A.20, subd. 2a. Except for contracts continued during negotiation, section 7 forbids an employer from entering into a contract provision which extends former employee benefits beyond the duration of the contract. However, the effective date of this section was not made retroactive to August 1, 1986. "Minnesota laws are presumed to have no retroactive effect unless clearly and manifestly intended by the legislature." *Mason v. Farmers Ins. Cos.*, 281 N.W.2d 344, 348 (Minn.1979) (citing Minn.Stat. § 645.21). Therefore, Article X was not illegal, and its provisions stand.

### 3.

There are three holdings by the trial court that we need not address because of our preceding decisions. The first is its conclusion that the term "former employee" as found in Minn.Stat. § 179A.20, subd. 2a does not include retirees. Because we have determined this section does not apply retroactively to the contracts in question, we will not decide this issue.

Second, appellants cite as error the court's determination there was good faith bargaining. Because we conclude Article X has been declared at impasse by both parties and is open for arbitration, there is no need for us to decide this issue.

Third, the trial court, as an alternative to its determination that the 1988 amendments concerning retiree health insurance premiums allow unilateral change in the terms of the contract, concluded that under the contract between LELS and the County, the terms of the contract could only be extended for one year unless timely notice was given to open negotiations. Because notice was not timely given, the trial court found the terms of the contract lost their effect on December 30, 1989, one year after the contract's expiration date. A party may not contract out of the provisions of Minn.Stat. § 179A.20, subd. 6. When notice to reopen a contract is untimely, the only penalty allowed by statute is a fine of $10 per day for each day notice is late. Minn.Stat. § 179A.14, subd. 1(b). Upon late notice, such a fine may be levied, but negotiations may then begin and the terms of the contract remain in effect until changed by agreement of the parties or through arbitration.

### DECISION

We affirm the trial court's determination that the retirees' right to full payment of group hospitalization premiums vested upon retirement and may not be changed without the retirees' express consent. We reverse the trial court's declaration of the employer's right to unilaterally alter the terms of the collective bargaining agreement for essential employees governing the payment of premiums for retiree health insurance. We conclude the employer is forbidden to make a unilateral change under PELRA.

Affirmed in part, reversed in part.

FORSBERG, Judge (dissenting):

I would affirm the trial court's determination that after bargaining in good faith to impasse on Article X concerning the payment of health insurance premiums for

retirees, the county was free to implement its last best offer on the contract term.

As to terms in contracts with essential employees which are subject to interest arbitration, I agree with the majority's construction of Minn.Stat. § 179A.20, subd. 6 (1990) that when those terms are certified at impasse, they remain in effect until arbitration over the new contract is complete. However, the legislature has specifically stated the failure to reach agreement over the issue of the payment of retiree insurance premiums is not subject to interest arbitration. Minn.Stat. § 179A.16, subd. 9. Therefore, I believe any terms dealing with this issue which are at impasse do not survive beyond the expiration date of the existing contract, in this case, December 31, 1989.

The majority would apply the provisions of Minn.Stat. § 179A.16, subd. 9 only when bargaining has reached impasse on the initial introduction into the contract of terms relating to retirees' insurance benefits and not when the terms already exist in the contract. The language of the subdivision does not support such a dichotomy. The subdivision clearly states:

> Failure to reach agreement on employer payment of, or contributions toward, premiums for group insurance coverage of retired employees is not subject to interest arbitration procedures under this section.

Minn.Stat. § 179A.16, subd. 9. Nothing in this language suggests the subdivision applies only to the introduction for the first time of terms dealing with this matter.

Minn.Stat. § 179A.20, subd. 2a provides that a contract cannot obligate an employer to fund health care benefits for former employees beyond the terms of the existing contract. This section also suggests the majority's interpretation of the limitations on Minn.Stat. § 179A.16, subd. 9 is incorrect. If Article X were subject to interest arbitration and, thus, a possible determination retaining the article in the new contract, the county's obligation to fund health insurance might be extended beyond the existing contract. Section 179A.20, subd. 2a prohibits such an obligation.

I believe a more reasonable interpretation of the above three provisions of the statute is that if an agreement on the payment of insurance premiums for retirees cannot be reached, the existing provisions cannot be enforced beyond the expiration date of the contract, and the employer may unilaterally implement changes in its policy on this issue. Therefore, since the one year extension of the 1988 contract between LELS and the county expired on December 31, 1989, the county was free to implement its new policy on January 1, 1990.

I respectfully dissent.