**LAW ENFORCEMENT LABOR SERVICES, INC., et al.,**
**Respondents,**

v.

**COUNTY OF MOWER, et al.,**
**Petitioners, Appellants.**

**No. C9-90-2329.**

Supreme Court of Minnesota.

April 24, 1992.

Richard A. Beens, Scott M. Lepak, Barna, Guzy & Steffen, Ltd., Coon Rapids, for appellants.

Gregg M. Corwin, Linda M. Nelson, Karin Peterson, Gregg M. Corwin & Associates, St. Louis Park, for respondents.

Dale G. Swanson, Forest Lake, for amicus curiae, Minnesota Elementary School Principals' Ass'n.

## OPINION

COYNE, Justice.

On the petition of the County of Mower and its Board of Commissioners we review two separate issues: (1) May essential employees compel their employers to submit disputes over the payment of dependent health care premiums upon retirement to interest arbitration? (2) Do retirees who retired under a collective bargaining agreement that provides full payment of dependent health care premiums during retirement have a vested right to such coverage so that it cannot be altered absent express consent? The court of appeals answered both questions in the affirmative. We reverse as to the first issue and affirm as to the second.

Law Enforcement Labor Services, Inc. is the exclusive representative of all full time nonprobationary deputy sheriffs of the Mower County Sheriff's Department. Since 1981 every collective bargaining agreement between the county and the union, including the 1987–1988 agreement which is at issue here, has contained the following language with respect to retirement benefits:

## ARTICLE X

### RETIREMENT PROVISIONS

*Section B.* Retirement benefits shall be available to any employee who retires

upon attaining age fifty-five (55) with at least ten years of service in accordance with the following schedule:

1. Any such retired employee shall be allowed to continue as a member of the applicable group hospitalization, surgical and major medical plan insurance until his death and thereafter his dependents may continue with the group for one (1) year upon paying the premium monthly in advance therefor.

2. Any employee who retires with thirty (30) years of service after attaining age fifty-five (55) shall have the group hospitalization costs paid by the County.

3. Any employee who retires with twenty (20) years of service after attaining age sixty (60) shall have the group hospitalization costs paid by the County.

4. Any employee who retires with fifteen (15) years of service after attaining the age of sixty-two (62) shall have the group hospitalization paid by the County.

5. Any employee who retires with ten (10) years of service after attaining age sixty-five (65) shall have the group hospitalization costs paid by the County.

According to its terms, all provisions in the 1987–1988 collective bargaining agreement are effective from January 1, 1987 to December 31, 1988 and from year to year thereafter unless either party gives notice at least 60 days prior to the agreement's termination date or to any subsequent anniversary date. In February 1989 the union twice attempted to notify the county that it wished to negotiate a new collective bargaining agreement. Notwithstanding the untimeliness of the notices, in April 1989 the parties, with a mediator from the Bureau of Mediation Services, bargained over the terms of a contract for 1989 and 1990. On July 18, 1989, while the parties were still negotiating, the Mower County Board of Commissioners unilaterally adopted a resolution requiring retirees to contribute to dependent health care insurance premiums at the same rate as the deputy sher-

iffs currently employed by the department—i.e., one-half of any increase in dependent health care insurance premiums or $15 per month, whichever is the lesser.

At the union's request, on July 25, 1989 the Board of Mediation Services certified at impasse 13 issues, one of which was the matter of health care benefits upon retirement. An arbitrator was selected; but the county refused to submit any issue regarding the payment of dependent health care insurance premiums at retirement to interest arbitration contending that it had no obligation to do so. When it became apparent that the parties could not resolve their differences and that the county intended to require contribution for dependent health care insurance premiums beginning January 1, 1990, the union and two retired deputy sheriffs commenced this action.

Respondent Lowell R. Baker, retired chief deputy sheriff, was one of the retirees affected by the revised health insurance policy; for the first time since his retirement he faced the prospect of contributing to the cost of dependent health care insurance premiums. Baker had retired while the 1983–1984 collective bargaining agreement was in effect, and the county agreed that, pursuant to language identical to that of article X of the 1987–1988 collective bargaining agreement, Baker was entitled to receive health care retirement benefits accorded a 15–year veteran of the department. The parties stipulated that Baker has standing to sue regarding the county's revision of retirees' health care benefits and that three other retired county deputy sheriffs are situated similarly to Baker and are entitled to any relief granted him.

The district court ruled that disputes concerning the payment of health care insurance premiums at retirement are not subject to interest arbitration and that each retired deputy sheriff had a vested right to the dependent health care insurance coverage provided by the collective bargaining agreement in force on the date of retirement. The county was permanently enjoined from implementing any change in the benefits of Baker or any similarly situ-

ated retiree until the county and the individual retiree agree to a modification. A divided court of appeals reversed with respect to interest arbitration, holding that essential employees may compel the county to arbitrate disputes over the payment of health care insurance premiums upon retirement, but affirmed the determination that the rights of retirees vested upon retirement. 469 N.W.2d 496.

■ The Public Employment Labor Relations Act (PELRA) denies to certain public employees, the performance of whose duties is essential to the public welfare, the right to strike. Minn.Stat. § 179A.18, subd. 1 (1990). Peace officers, including county sheriffs and their deputies, are essential employees. Minn.Stat. § 179A.03, subd. 7 (1990). At the same time, however, that PELRA prohibits strikes by essential employees, it affords essential employees a special procedure for resolution of labor disputes. If either or both of the parties petition for binding arbitration declaring that an impasse has been reached and the commissioner of the bureau of mediation services determines that further mediation will be fruitless, the commissioner certifies the matter for binding arbitration. Minn. Stat. § 179A.16, subd. 2 (1990). Of course, the parties are required to arbitrate only those matters which they must negotiate—grievance procedures and the terms and conditions of employment. Minn.Stat. § 179A.07, subd. 2 (1990).

Since PELRA was enacted in 1971, retirement benefits in general and retirement health care benefits in particular have more than once moved in or out of the statutory definition of "terms and conditions of employment." Originally, "terms and conditions of employment" meant "the hours of employment, the compensation therefor including fringe benefits, and the employer's personnel policies affecting the working conditions of the employees." Minn. Laws 1971 extra session chap. 33, § 3. In 1973 retirement contributions or benefits were excepted from the fringe benefits included within the definition of "terms and conditions of employment" and, thus, were no longer subjects of mandatory

negotiation. Minn. Laws 1973 chap. 635, § 6.

Although the issue in *AFSCME Councils 6, 14, 65 and 96 v. Sundquist*, 338 N.W.2d 560 (Minn.1983), was the validity of an act which required public employees to contribute an additional 2% of salary to pension funds, the *Sundquist* decision addressed fundamental concerns over retirement issues in the public sector, some of which are implicated in the present controversy. In support of the holding that "public pension issues are not subjects which may be collectively bargained," we cited three policy considerations: "(1) to permit employers to contain the rising cost of pension benefits; (2) to permit the legislature to participate in the making of significant government policy, and (3) to promote uniformity and to prevent the existence of disparate benefits between different funds based upon the skill and success of employees' bargaining representative." *Id.* at 576.

Shortly thereafter, Minn.Stat. § 179A.03, subd. 19 was amended once again by the addition of the provision, " 'Terms and conditions of employment' is subject to section 179A.07," which requires a public employer to meet and negotiate in good faith regarding terms and conditions of employment but not with respect to matters of inherent managerial policy. Minn. Laws 1984 chap. 462, § 4.

The most recent modification of the definition of "terms and conditions of employment" was precipitated by *Minnesota Teamsters Public and Law Enforcement Employees Union, Local No. 320 v. County of Washington*, 413 N.W.2d 245 (Minn. App.1987). In that case the court of appeals affirmed the district court's conclusion that Minn.Stat. § 179A.03, subd. 19 (1984), "exclud[ed] health insurance benefits for retired persons from the scope of collective bargaining in the public sector." *Id.* at 247. This court granted review of *County of Washington*, but the appeal was dismissed when the legislature, reacting swiftly to the court of appeals' decision, amended PELRA to govern discord over the administration of retirement benefits

for public employees. Following the enactment of Minn. Laws 1988 chap. 605, § 4, section 179A.03, subd. 19 reads as follows:

'Terms and conditions of employment' means the hours of employment, the compensation therefor including fringe benefits except retirement contributions or benefits other than employer payment of or contributions to premiums for group insurance coverage of retired employees or severance pay, and the employer's personnel policies, affecting the working conditions of the employees. * * * 'Terms and conditions of employment' is subject to section 179A.07.

(Amended portion underlined). At the same time the legislature added subdivision 9 to Minn.Stat. § 179A.16:

Failure to reach agreement on employer payment of, or contributions toward, premiums for group insurance coverage of retired employees is not subject to interest arbitration procedures under this section.

Minn. Laws 1988 ch. 605, § 6.

The foregoing sections—§§ 179A.03, subd. 19 and 179A.16, subd. 9, as amended in 1988—straightforwardly provide, it seems to us, that employer payment of or contributions toward premiums for group insurance coverage of retired employees is a term of employment on which a public employer must meet and negotiate in good faith, but if negotiations reach impasse, the employer cannot be compelled to enter into binding arbitration. However, the 1988 PELRA revision did not stop there. Subdivision 2a was inserted into Minn.Stat. § 179A.20:

A contract may not obligate an employer to fund all or part of the cost of health care benefits for a former employee beyond the duration of the contract, *subject to section 179A.20, subdivision 6. * * *

Minn. Laws 1988 ch. 605, § 7 (emphasis added). Minn.Stat. § 179A.20, subd. 6, last amended in 1984—Minn. Laws 1984 chap. 462, § 21—remains unchanged:

During the period after contract expiration and prior to the date when the right to strike matures, and for additional time if the parties agree, the terms of the existing contract shall continue in effect and shall be enforceable upon both parties.

■ With respect to contracts covering those public employees entitled to strike, subjecting the provisions of section 179A.20, subd. 2a to those of section 179A.20, subd. 6 has the salutary effect of extending any contractual obligation the employer may have to pay all or part of the cost of health care benefits for present or retired public employees at least until the right to strike matures. Nothing in section 179A.20, subd. 6, addresses contracts between a public employer and essential employees. The union contends that because essential employees do not have the right to strike, subdivision 6 indefinitely extends the terms of its 1987–1988 collective bargaining agreement, and that, notwithstanding the 1988 amendments to PELRA, it may therefore compel the county to submit disputes over contribution to dependent care premiums on retirement to binding arbitration. The court of appeals agreed. *Law Enforcement Labor Services, Inc. v. County of Mower*, 469 N.W.2d 496, 499 (Minn.App.1991).

We are not persuaded that the provisions of section 179A.20, subd. 6 vitiate the 1988 amendments to PELRA: section 179A.20, subd. 6 does not, it seems to us, subject every collective bargaining agreement entered into before the effective date of the 1988 amendments—April 25, 1988—and to which essential employees are a party to the dispute resolution procedures in force when the collectively bargained agreement was adopted. To construe these interlocking sections of PELRA otherwise would be to lock Mower County and every other public employer which was a party to a collectively bargained agreement on the effective date of the 1988 amendments forever into interest arbitration of health care benefits for retired employees, a result clearly at odds with the intent of the statute.

Whether the contract in question expired according to its terms on December 31, 1989, was extended 45 days to the date on which the right of nonessential public employees to strike would have matured, or

was extended for some undetermined reasonable period of time we need not decide here; in any case the 1987–1988 contract has long since terminated. We hold, however, that "employer payment of or contributions to premiums for group insurance coverage of retired employees" is a term of employment on which the county must meet and negotiate in good faith. Minn. Stat. § 179A.03, subd. 19 (1990). If the parties reach an agreement, the resulting contract "may not" obligate the county to fund all or part of the cost of retiree health care beyond the expiration of that contract. Minn.Stat. § 179A.20, subd. 2a (1990). If, on the other hand, the negotiations reach impasse, the county cannot be required to submit the matter to binding arbitration. Minn.Stat. § 179A.16, subd. 9 (1990). Therefore, after these parties had negotiated in good faith to impasse, the county was free to change its policy with respect to the payment of premiums for health care insurance for retired employees, such change to be effective on termination of the contract then in force.

 With respect, however, to the rights of respondent Baker and other retired deputy sheriffs similarly situated, we leave the province of PELRA and invoke principles that sound in contract. The collectively bargained agreement in force at the time deputy sheriff Baker retired included retirement provisions like those set out at article X of the 1987–1988 agreement. Although article X does not contain express provision for the payment of health care insurance premiums for the benefit of a retiree's dependents, when Baker retired the county advised him in writing that it would pay health care insurance premiums for him and his dependents and it regularly paid those premiums on behalf of Baker and other qualified retirees.

Baker reasonably relied on the county's assurances that he and his dependents were entitled to health care insurance at the county's expense and on its custom of regular payment of the premiums. As a consequence, he did not anticipate having to pay such premiums from his own funds or to investigate alternative sources of health care insurance, which have now become very expensive. Having represented to Baker that he had satisfied the eligibility conditions for retirement benefits, including payment by the county of health care insurance premiums for the retiree and his dependents, the county is estopped from depriving Baker and other similarly situated retirees of the fruit of their legitimate expectations. *See Christensen v. Minneapolis Municipal Employees Retirement Board*, 331 N.W.2d 740 (Minn.1983) (promises regarding retirement benefits held binding pursuant to doctrine of promissory estoppel). We hold, therefore, that the County of Mower is estopped from denying that the collectively bargained agreement in force at the time of the retirement of Baker and other similarly situated retirees provides retirement benefits which include payment by the county of premiums for health care insurance covering the retiree and his dependents and that the right to such benefits is vested for the life of the retiree and cannot be altered absent the retiree's express consent.

Reversed in part and affirmed in part.