# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Marconi v. City of Joliet*, 2013 IL App (3d) 110865

| | |
|---|---|
| Appellate Court Caption | MICHAEL MARCONI, JAMES LUKANCIC, JAMES VANCINA and DAVID CONNER, Plaintiffs-Appellees, v. THE CITY OF JOLIET, an Illinois Municipal Corporation, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-11-0865 |
| Filed | May 2, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court erred in considering a case challenging a reduction of the retirement health insurance benefits promised to plaintiffs upon their retirement under the pension protection clause of the Illinois Constitution without first attempting to resolve the matter on nonconstitutional grounds; therefore, the trial court's decision for plaintiffs was reversed and the cause was remanded for a determination as to whether plaintiffs had a vested right to the promised benefits, and the pension protection clause should be addressed only if no vested rights are found. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 10-MR-165; the Hon. Barbara Petrungaro, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Jeffrey Plyman (argued), Assistant Corporation Counsel, of Joliet, for appellant.

Theodore J. Jarz (argued), of Lucas & Jarz, LLC, of Joliet, and Timothy J. Witczak, of Law Offices of Beau B. Brindley, of Chicago, for appellees.

James J. Powers and Melissa A. Schilling, both of Clark Baird Smith LLP, of Rosemont, and Brian Day, Ashley Niebur, and Roger Huebner, all of Illinois Municipal League, of Springfield, *amici curiae*.

Panel

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.

Justices Lytton and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1    The plaintiffs, Michael Marconi, James Vancina, and David Conner, retired Joliet firefighters, and James Lukancic, a retired Joliet police officer, sued their former employer, the City of Joliet (the City), seeking declaratory and injunctive relief and monetary damages in response to the City's decision to reduce some of the retirement health benefits it promised each of the plaintiffs at the time of his retirement. The plaintiffs and the City filed opposing motions for summary judgment. The circuit court ruled that the changes imposed by the City violated article XII, section 5, of the Constitution of the State of Illinois of 1970 (Ill. Const. 1970, art. XIII, § 5) (the pension protection clause). Accordingly, the court granted the plaintiffs' motion for summary judgment and denied the City's motion for summary judgment. The court ordered the City to reinstate the health benefits promised to each plaintiff at the time of his retirement, enjoined the City from unilaterally implementing any future changes to the plaintiffs' health benefits, and ordered the City to pay money damages. The City appealed.

¶ 2                                                    FACTS

¶ 3    The plaintiffs are former employees of the City's police or fire department. Each plaintiff retired on or before July 3, 2008.[1] During their employment, the plaintiffs were members of

[1]Marconi retired July 21, 2003; Vancina retired April 25, 2003; Conner retired March 1, 2004, and Lukancic retired July 3, 2008.

unions that had negotiated collective bargaining agreements with the City.[2] These agreements established the terms and conditions of employment for active employees, including health insurance and other employment benefits that the City agreed to pay to active employees.

¶ 4     The agreements also provided for certain retirement benefits that the City agreed to pay to eligible retired employees, including health insurance benefits. For example, each agreement provided that an eligible retiree and his or her eligible dependents would receive "Hospitalization and Major Medical Benefits." Each agreement provided that the City "shall bear the costs" of these benefits for the retirees, but that the retirees "shall bear the costs of these benefits, i.e. pay the monthly premium charges, for eligible dependents." It is undisputed that, at the time of his retirement, each of the plaintiffs was eligible and entitled to receive these health care benefits from the City under the terms of his collective bargaining agreement.

¶ 5     Each agreement provided that payment of any and all retiree health benefits "shall be made solely in accordance with and subject to the terms, conditions, and provisions of the Plan Documents (Employees Benefit Plan No. 15083 and Group Policy No. 47942) which are on file in the Office of the City Clerk." Each agreement also provided that "[e]ach covered employee shall receive a booklet describing the coverages provided under the Group Life and Hospitalization, Dental and Long Term Disability plans."

¶ 6     None of the agreements required retirees to pay any deductible amounts for health care expenses paid to "in-plan" providers. However, retirees were required to make modest copayments for prescription drugs.[3] Specifically, the employee benefits booklets provided to the plaintiffs indicate that: (1) Marconi, Vancina, and Conner were required to pay $3 per prescription drug (unless such drugs were ordered by mail, in which case there was no copayment); and (2) Lukancic was required to pay $5 per prescription for generic drugs, $10 per prescription for brand name drugs for which there was no generic available, and $35 for brand name drugs for which there was a generic available.

¶ 7     Each of the agreements had a limited term as specified in an express durational provision.

¶ 8     In 2009, after each of the plaintiffs had retired and was receiving health care benefits

---

[2]Marconi, Vancina, and Conner were members of the Joliet Fire Officers, Local 2369, IAFF AFL-CIO, which negotiated a collective bargaining agreement with the City that was in effect from 1999 through 2003. Marconi and Vancina retired while that agreement was in effect. Conner retired under a subsequent collective bargaining agreement that was in effect from 2004 through 2011. Lukancic was a member of the Illinois Fraternal Order of Police (Joliet Police Supervisors Association), which negotiated a collective bargaining agreement with the City that was in effect from 2001 to 2004. Lukancic retired under that agreement.

[3]The collective bargaining agreement under which plaintiff Conner retired expressly included a "Prescription Drug Benefit." The agreements under which the other three plaintiffs retired did not include such an express provision. However, the plaintiffs' employee benefits booklets indicated that each plaintiff was entitled to a prescription drug benefit subject to various copayment levels. The City does not deny that each of the claimants was receiving a prescription drug benefit after he retired.

from the City, the City entered into negotiations with each of its employees' unions to negotiate changes in its self-insured group health insurance plan. Because the claimants were retired at that time, they were no longer members of any of the unions negotiating with the City. The negotiations resulted in a new 2010 agreement covering all of the City's employees. Although the new agreement was negotiated by the City and the employee unions–which represented only active employees–the City unilaterally applied the new agreement to all current City retirees and their dependents.[4]

¶ 9 The new 2010 agreement purported to make certain changes to the health care benefits of both active employees and retirees. For example, the new agreement imposed a $250-per-year individual deductible and a $500-per-year family deductible. In addition, the new agreement increased the generic prescription drug copay to $8 and the brand name prescription drug copay to $15 for active employees and retirees.

¶ 10 However, not all of the changes made to the health care benefits of active employees were applied to retirees. For example, although the new agreement imposed a new $50-per-paycheck premium deduction for active employees, it did not do so for retirees. Instead, it exempted retirees from paying health insurance premiums, thereby continuing the City's current practice, for a period of seven years. Moreover, the new agreement froze the monthly premium payments for the dependents of retirees at their current levels for the next seven years. Specifically, the new agreement capped monthly premiums at $118.20 per month for the spouses of retirees, and $59.10 for other dependents of retirees.

¶ 11 Three of the four collective bargaining agreements at issue in this case (Marconi's, Vancina's, and Lukancic's) expired before the City began negotiating the new 2010 agreement. The durational clause in Conner's agreement provided that the agreement remained in effect until December 31, 2011 "and shall be automatically renewed from year to year thereafter unless either party shall notify the other party in writing sixty (60) days prior to December 31, 2011 that it desires to modify th[e] Agreement." In addition, article XXI of Conner's agreement, addressing the "Group Insurance Program"(which includes the sections addressing retirement health care benefits), contained a "Reopener" provision which stated: "[f]rom time to time during the term of this Agreement, upon ten (10) days written notice to the Union the City may reopen this Agreement for negotiations with the Union with respect to any benefit provided pursuant to this Article for calendar year 2008, 2009, 2010 and/or 2011."

¶ 12 The plaintiffs sought an injunction to stop the City from imposing the new deductibles and increases in prescription drug copays on them. The plaintiffs argued that these proposed changes to their contractual retirement benefits violated the pension protection clause of the Illinois Constitution. That clause provides:

"Membership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or

---

[4]The City also applied the new agreement to all of its full-time active employees, including those not represented by a union.

impaired." Ill. Const. 1970, art. XIII, § 5.

The plaintiffs argued that the new deductibles and copayments imposed by the City violated this provision because they "diminished or impaired" the health care benefits to which the plaintiffs were contractually entitled at the time of their retirement.

¶ 13   The parties filed cross-motions for summary judgment. The circuit court granted the plaintiffs' motion for summary judgment and denied the City's motion. As a matter of first impression, the circuit court held that the health care benefits at issue in this case are "benefits of [a] pension and retirement system," and therefore protected under the pension protection clause. In a subsequent order, the court held that the City's actions in imposing new deductibles and increasing prescription drug copayments "diminish[ed] or impair[ed]" these benefits in violation of the pension protection clause. The City appealed.

¶ 14   The parties' initial briefs on appeal addressed only the constitutional issue decided by the circuit court. After oral argument, we directed the parties to file supplemental briefs addressing the following additional questions: (1) whether the City had a contractual obligation to continue to provide the retirement health insurance benefits that it promised each plaintiff at the time of his retirement; and (2) if so, whether the City breached that obligation. The parties timely filed supplemental issues addressing these questions.

¶ 15                                     ANALYSIS

¶ 16   As noted above, the circuit court decided this case on constitutional grounds, and the parties' initial appellate briefs addressed only the constitutional question of whether the City's changes to the plaintiffs' retirement health benefits violated the pension protection clause of the Illinois Constitution. However, we must avoid the adjudication of constitutional questions when a case can be decided on other grounds. See, *e.g.*, *Innovative Modular Solutions v. Hazel Crest School District 152.5*, 2012 IL 112052, ¶ 38; *People v. Vesey*, 2011 IL App (3d) 090570; see also *People v. Jackson*, 2013 IL 113986, ¶ 14 ("courts will address constitutional issues only as a last resort, relying whenever possible on nonconstitutional grounds to decide cases"). Moreover, under Supreme Court Rule 366(a)(5), we have the discretionary authority to "enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief." Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994). This includes the authority to order supplemental briefing and to decide the case on an issue that was not initially raised by the parties or addressed by the circuit court. See, *e.g.*, *Mid-Century Insurance Co. v. Founders Insurance Co.*, 404 Ill. App. 3d 961, 966 (2010) ("[U]nder Rule 366 [citation], a reviewing court may, in the exercise of its responsibility for a just result, ignore consideration of waiver and decide a case on grounds not properly raised or not raised at all by the parties." (Internal quotation marks omitted.)).

¶ 17   Accordingly, before considering the constitutional issue raised by the parties, we must first determine whether the case can be decided on nonconstitutional grounds. We will therefore begin our analysis by examining the question that the parties addressed in their supplemental briefs, *i.e.*, whether the City had a contractual obligation to continue to provide the retirement health insurance benefits it promised each plaintiff at the time of his retirement

and, if so, whether the City breached that obligation by unilaterally reducing those benefits. In other words, we will attempt to determine whether each plaintiff has a vested right to receive the specific health care benefits promised in the collective bargaining agreement under which he retired, thereby barring the City from unilaterally reducing such benefits after his retirement. If the plaintiffs have such vested rights, the City's imposition of new deductibles and higher copayments for prescription drugs is unlawful as applied to them. See *Kulins v. Malco, a Microdot Co.*, 121 Ill. App. 3d 520, 527 (1984) (a vested contractual right survives modification or termination of the agreement and may not be modified or eliminated by such modification or termination). If not, the plaintiffs' contractual entitlement to the specific benefits provided in their collective bargaining agreements expired when those agreements terminated, and no principle of contract law would bar the City from reducing those benefits after the plaintiffs retired. Only in that event would we have to address whether the City's reduction of these benefits violated the pension protection clause of the Illinois Constitution.

¶ 18    We admittedly are addressing herein an issue that was not raised before the circuit court, but we are doing so in order to determine whether this case may be decided on nonconstitutional grounds. Though a reviewing court "should not normally search the record for unargued and unbriefed reasons to reverse a trial court judgment" and should "refrain from addressing [unbriefed issues] when it would have the effect of transforming the court's role from that of jurist to advocate," we are not doing so here. (Emphasis and internal quotation marks omitted.) *People v. Givens*, 237 Ill. 2d 311, 323-24 (2010). Instead, we are correcting the circuit court's decision to decide a constitutional issue without first determining whether the case could be decided on other grounds. See *Givens*, 237 Ill. 2d at 325 (ruling that a reviewing court has the power to raise unbriefed issues "when a clear and obvious error exists in the trial court proceedings"); *Innovative Modular Solutions*, 2012 IL 112052, ¶ 38 ("courts should avoid constitutional questions when a case can be decided on other grounds"). We are also restricting the parties from constructing a constitutional claim out of what appears to be a simple contractual dispute. Parties should not heedlessly (and needlessly) drive trial courts into constitutional canyons. Nor should reviewing courts decide cases on constitutional grounds merely because the parties have failed to raise obvious alternative arguments that could obviate any constitutional issue.

¶ 19    Before addressing the merits of the contract issues addressed in the parties' supplemental briefs, we must determine which jurisdiction's law governs our analysis. We must also decide whether to apply a legal presumption in favor of vesting, as some other jurisdictions have done. We address these issues in turn.

¶ 20                              A. Choice of Law

¶ 21    In *Haake v. Board of Education for Glenbard Township High School District 87*, 399 Ill. App. 3d 121 (2010), the First District of our Appellate Court addressed the question whether a public school board could decrease the health insurance benefits provided to retirees under certain collective bargaining agreements after the expiration of those agreements. That court held that, as the resolution of this issue involved the interpretation of collective bargaining

agreements, the plaintiffs' state-law claims for breach of contract were preempted by section 301 of the federal Labor Management Relations Act (29 U.S.C. § 185 *et seq.* (2000)) (LMRA). *Haake*, 399 Ill. App. 3d at 127 (" '[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law *** is pre-empted and federal labor-law principles *** must be employed to resolve the dispute.' " (quoting *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988))). Accordingly, in deciding the substantive issues raised by the parties, the court relied primarily upon federal cases interpreting the LMRA. *Haake*, 399 Ill. App. 3d at 128. Although the court found that the defendant had forfeited any preemption argument, it nevertheless concluded that "the interests of justice and the development of a sound body of precedent require[d] the application of federal common law." *Id.*

¶ 22       We disagree with the *Haake* court's choice-of-law analysis. Although state-law claims for breach of a collective bargaining agreement by a private employer are generally preempted by federal labor law, the federal act does not apply where the employer is "any State or political subdivision thereof." 29 U.S.C. § 152(2) (2000).[5] Here, the plaintiffs' employer was the City of Joliet–a political subdivision of the State of Illinois. Thus, any claim involving the interpretation of the plaintiffs' collective bargaining agreements arises under Illinois law, not federal law. See, *e.g.*, *Navlet v. Port of Seattle*, 194 P.3d 221, 227 (Wash. 2008) (*en banc*) (applying Washington law instead of federal law in determining whether retired public employees had a vested right to lifetime health care benefits under a collective bargaining agreement between their former union and the Port of Seattle). We believe the *Haake* court erred by concluding that the plaintiffs' claims for breach of contract, which were brought by Illinois public employees against their public employer, were governed by federal common law. We thus apply Illinois law in interpreting the collective bargaining agreements at issue in this case and in determining whether the City breached those agreements.

¶ 23                                    B. Vesting Presumption

¶ 24       Before turning to the merits, we must determine whether the contractual issues in this case should be governed by a presumption in favor of (or against) the vesting of retirement benefits under a collective bargaining agreement. Some courts have applied a presumption against the vesting of such benefits. In *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 607 (7th Cir. 1993), the court ruled that courts should presume that an employer's obligation to

---

[5]See *Davenport v. Washington Education Ass'n*, 551 U.S. 177, 181 (2007) ("The National Labor Relations Act leaves States free to regulate their labor relationships with their public employees."); *D'Acquisto v. Washington*, 640 F. Supp. 594, 624 (N.D. Ill. 1986) (holding that claims brought by Chicago police officers against the City of Chicago and other city officials were not preempted by the LMRA even though they involved the interpretation of collective bargaining agreements because "municipal governments, as arms of the state, are not employers under the Labor Management Relations Act and so are not covered by it"); see also *Navlet v. Port of Seattle*, 194 P.3d 221, 227 (Wash. 2008) (*en banc*); *Harris v. City of Chicago*, 665 F. Supp. 2d 935, 959 (N.D. Ill. 2009).

pay health benefits under a collective bargaining agreement ceases upon the expiration of the agreement. It noted, however, that this presumption may be rebutted by contractual language or by extrinsic evidence showing that the parties intended the benefits to survive the expiration of the agreement. *Id.* at 607-10. Similarly, in *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 138-39 (3d Cir. 1999), the court ruled that the retiree bears the burden of proving that the employer intended the benefits to vest and that "an employer's commitment to vest such benefits is not to be inferred lightly and must be stated in clear and express language."

¶ 25    However, in *Roth v. City of Glendale*, 2000 WI 100, 237 Wis. 2d 173, 614 N.W.2d 467, the Supreme Court of Wisconsin applied a presumption *in favor* of vesting retirement health care benefits. In *Roth*, the plaintiffs were retired employees of the City of Glendale, Wisconsin. The terms and conditions of the plaintiffs' employment were embodied in a series of collective bargaining agreements, each of which expired after a term of one to three years. The collective bargaining agreements in force at the time of each plaintiff's retirement provided that the City of Glendale would pay the entire cost of the retirees' health insurance premiums. *Roth*, 2000 WI 100, ¶ 8, 237 Wis. 2d 173, 614 N.W.2d 467. However, after the plaintiffs retired, the City of Glendale began requiring its retirees to pay a portion of their insurance premiums. *Id.* The retirees sued the City of Glendale for breach of contract, claiming a vested right to fully paid health insurance benefits under the collective bargaining agreements in force at the time of their respective retirements. *Id.* The circuit court applied *Senn v. United Dominion Industries*, Inc., 951 F.2d 806, 814-16 (7th Cir. 1992), which employed a presumption that health care benefits established by collective bargaining agreements do not survive the expiration of such agreements. It denied the plaintiffs' motion for summary judgment and granted summary judgment to the City of Glendale on that basis. *Roth*, 2000 WI 100, ¶ 10, 237 Wis. 2d 173, 614 N.W.2d 467.

¶ 26    The Supreme Court of Wisconsin reversed. In interpreting the plaintiffs' collective bargaining agreements, the court applied a presumption that health benefits promised in a collective bargaining agreement vest unless: (1) the language of the agreement suggests otherwise; or (2) the agreement is ambiguous and extrinsic evidence demonstrates that the parties did not intend the benefits to vest. *Id.* ¶ 23. The court reasoned that this presumption "comports with a more far-reaching understanding of the context in which retiree benefits arise and serves to fulfill the legitimate expectations of employees who have bargained for those benefits." (Internal quotation marks omitted.) *Id.* ¶ 26. In support of this conclusion, the court noted that employers offer employment benefits to attract and maintain personnel, and that "[t]he employer's promise of such benefits is an inducement to provide services for that particular employer to the exclusion of other employment opportunities." *Id.* ¶ 27. It also noted that bargained-for benefits are "deferred compensation for past services rendered," not mere "gratuities handed to the employee." *Id.* ¶ 28. Thus, the court concluded that treating such benefits as if they were mere gratuities which could be reduced or eliminated by the employer after an employee retires would frustrate the legitimate expectations of retirees. As the court put it:

"If employees trade off present wages for benefits upon retirement, they expect assurance

-8-

that these benefits will continue into the future. [Citation.] They do not expect their earned benefits to be whittled away, subject to the contingencies of future negotiations. [Citation.]" *Id.*

The court further reasoned that "[r]etirement benefits are essentially 'status' benefits that carry with them an inference that they continue as long as the prerequisite status is maintained and the beneficiary remains a retiree." *Id.*

¶ 27    The court also addressed several equitable considerations that weighed in favor of a vesting presumption. First, the court noted the unfairness of allowing an employer to offer retirement benefits as an inducement to employment and, after an employee has accepted employment under such circumstances and satisfied all the contractual conditions entitling him to such benefits, disregard or modify its contractual obligations. The court stated that permitting employers to do this absent some indication that the parties intended to limit the benefits to a fixed term would "def[y] *** equitable principles" and "render[ ] the promise of retirement benefits illusory." *Id.* ¶ 32. In addition, the court acknowledged that "many retirees live solely on their retirement benefits," and that "[r]etirees with fixed incomes are generally ill-prepared to meet additional financial obligations that were unanticipated and that may be incrementally modified without notice." *Id.* ¶ 33. Accordingly, the court concluded that "[a] presumption in favor of vesting that may be rebutted only by contrary indication in the language of the agreement or extrinsic evidence safeguards retirees from potential economic devastation." *Id.* ¶ 34.

¶ 28    The court further reasoned that the realities of the collective bargaining process for retiree benefits strongly supported a vesting presumption. It noted that unions are "not obligated to represent [retirees'] interests for the purposes of bargaining for continued benefits." *Id.* ¶ 35. Indeed, it observed that such bargaining "may create conflicts of interests between the retirees and the current union employees." *Id.* Quoting the United States Supreme Court's decision in *Allied Chemical & Alkali Workers of America v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 173 (1971), the court found:

> " 'Pensioners' interests extend only to retirement benefits, to the exclusion of wage rates, hours, working conditions, and all other terms of active employment. Incorporation of such a limited-purpose constituency in the bargaining unit would create the potential for severe internal conflicts that would impair the unit's ability to function and would disrupt the processes of collective bargaining. Moreover, the risk cannot be overlooked that union representatives on occasion might see fit to bargain for improved wages or other conditions favoring active employees at the expense of retirees' benefits.' " (Internal quotation marks omitted.) *Roth*, 2000 WI 100, ¶ 35, 237 Wis. 2d 173, 614 N.W.2d 467.

Accordingly, the court concluded that a presumption in favor of vesting retirement benefits absent contrary indication "serves to protect the voiceless in the subsequent negotiating process." *Id.* ¶ 36. Without such a presumption, "unions that are negotiating on behalf of current employees may unilaterally bargain away contractual promises made to retirees, thereby frustrating the expectations of employees who have earned retirement benefits by providing past services." *Id.*

¶ 29    We find the *Roth* court's reasoning persuasive. Unless the contractual language or

extrinsic evidence clearly shows otherwise, retirement health care benefits promised under a collective bargaining agreement are not mere gratuities that may be unilaterally reduced or eliminated by the employer after an employee has earned them. The promise of health insurance benefits at retirement may induce an employee to accept a job and to work for the requisite number of years in order to become eligible for such benefits. See, *e.g.*, *Poole v. City of Waterbury*, 831 A.2d 211, 223 (Conn. 2003). This provides a substantial benefit to the employer. Accordingly, once an employee becomes eligible for health insurance benefits and retires under the agreement, the right to receive the benefits vests, and the employer must provide the benefits as promised in the agreement. See generally *Kulins*, 121 Ill. App. 3d at 525-27; *Lawrence v. Board of Education of School District 189*, 152 Ill. App. 3d 187, 197-201 (1987).

¶ 30    Moreover, fundamental fairness requires a presumption in favor of vesting. When the promise of retirement health benefits induces an employee to work for an employer until he becomes eligible for such benefits, this inducement may prevent him from finding alternative ways to prepare for retirement, either by finding other employment with higher wages or benefits or by negotiating with the employer for higher wages in lieu of retirement benefits so that he can start his own personal retirement account. See, *e.g.*, *Navlet*, 194 P.3d at 237. Such an employee may be put in an untenable position when his employer unilaterally withdraws or diminishes his benefits after the employee has retired. See generally *Poole*, 831 A.2d at 224. He may be forced to incur a "substantial financial burden for which [he] had not planned at a time when it is least affordable." *Id.*; see also *Law Enforcement Labor Services, Inc. v. County of Mower*, 483 N.W.2d 696, 701 (Minn. 1992).

¶ 31    Further, a vesting presumption protects retirees from the vagaries of a collective bargaining process that no longer represents their interests. As the *Roth* court correctly noted, when negotiating a new collective bargaining agreement, unions represent only the interests of active employees, not employees who have already retired. *Roth*, 2000 WI 100, ¶ 35, 237 Wis. 2d 173, 614 N.W.2d 467; see also *Allied Chemical*, 404 U.S. at 173; *Carnock v. City of Decatur*, 253 Ill. App. 3d 892, 899 (1993) ("a union has no obligation to represent retirees, who are outside the collective-bargaining unit"). Accordingly, unions have every incentive to bargain for conditions that would benefit active employees at the expense of retirees. See *Allied Chemical*, 404 U.S. at 173. For example, a union might agree with an employer to raise the wages of active employees in exchange for a reduction in retiree health care benefits. As noted, retirees have no voice in the collective bargaining process after they have retired and are therefore powerless to prevent their former union and their former employer from reaching such an agreement. The only protections that retirees have are the contractual rights conferred by the collective bargaining agreements under which they retired. Moreover, retirees are more vulnerable to reductions in their expected benefits than are active employees because they are less able to recoup the loss by earning additional wages or benefits. Thus, unless the language of the collective bargaining agreement or some other evidence suggests that the parties did not intend for retirement health benefits to survive the expiration of the agreement, courts should presume that such benefits have vested.

¶ 32    The City contends, however, that sections 367f and 367g of the Illinois Insurance Code (215 ILCS 5/367f, 367g (West 2010)) "suggest[ ] that a rule of decision in support of vesting

is inappropriate." Those sections provide insurance continuance privileges for retired firefighters and police officers. Section 367f provides, in relevant part:

"No policy of group accident and health insurance under which firemen employed by a municipality are insured for their individual benefit shall be issued or delivered in this State to any municipality unless such group policy provides for the election of continued group insurance coverage for the retirement or disability period of each fireman who is insured under the provisions of the group policy on the day immediately preceding the day on which the retirement or disability period of such fireman begins. So long as any required premiums for continued group insurance coverage are paid in accordance with the provisions of the group policy, an election made pursuant to this Section shall provide continued group insurance coverage for a fireman throughout the retirement or disability period of the fireman ***. Continued group insurance coverage shall be provided in accordance with this Section at the same premium rate from time to time charged for equivalent coverage provided under the group policy with respect to covered firemen whose retirement or disability period has not begun, and no distinction or discrimination in the amount or rate of premiums or in any waiver of premium or other benefit provision shall be made between continued group insurance coverage elected pursuant to this Section and equivalent coverage provided to firemen under the group policy other than pursuant to the provisions of this Section; provided that no municipality shall be required by reason of any provision of this Section to pay any group insurance premium other than one that may be negotiated in a collective bargaining agreement." 215 ILCS 5/367f (West 2010).[6]

Section 367g grants the identical privileges to retired policemen.

¶ 33    The City notes that sections 367f and 367g require that continued health insurance coverage be provided to retired firemen and policemen "at the same premium rate" for "equivalent coverage" provided to active employees, and that "no distinction in premiums, waiver of premiums, or other benefit provisions be made." According to the City, these provisions mandate that retirees be treated in the *same manner* as active employees, which is precisely what the City has done in this case with respect to the increased deductibles and copayments. The City argues that, if we find that the plaintiffs' retirement benefits have vested, then the plaintiffs will be entitled to receive benefits which are *greater* than those currently received by active employees. The City suggests that this result would be "inappropriate" under sections 367f and 367g.

---

[6]Section 367f also provides that "In the event that a municipality makes a program of accident, health, hospital or medical benefits available to its firemen through self-insurance, *** whether the cost of such benefits is borne by the municipality or the firemen or both, such firemen and their surviving spouses shall have the same right to elect continued coverage under such program of benefits as they would have if such benefits were provided by a policy of group accident and health insurance. In such cases, *** the statement of election shall be sent to the municipality; and references to the required premium shall refer to that portion of the cost of such benefits which is not borne by the municipality, either voluntarily or pursuant to the provisions of a collective bargaining agreement." 215 ILCS 5/367f (West 2010).

¶ 34    We disagree. In our view, the application of a vesting presumption would not be in tension with the purpose of section 367f or section 367g. "In construing the meaning of a statute, the primary objective of this court is to ascertain and give effect to the intention of the legislature." *Metzger v. DaRosa*, 209 Ill. 2d 30, 34 (2004). "The plain language of the statute is the best indicator of the legislature's intent." *Id.* at 34-35. "When the statute's language is clear, it will be given effect without resort to other aids of statutory construction." *Id.* at 35. "If the language of a statute is ambiguous, [a reviewing court may consider] extrinsic aids of statutory construction, including legislative history and well-established rules of construction." *Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907, ¶ 47.

¶ 35    The legislature's intent in enacting sections 367f and 367g is clear from the plain language of those provisions. Those statutes require municipalities to give their retired firefighters and policemen the *option* of "elect[ing]" the same insurance coverage the municipalities offer to their active employees. They do not *require* retired firemen or policemen to elect such equivalent coverage. Moreover, nothing in either statute suggests that employees who are already contractually entitled to receive greater insurance benefits than current active employees must surrender their contractual rights. Nor does either statute purport to override vested rights provided in a collective bargaining agreement. In other words, sections 367f and 367g establish a floor for retiree health insurance coverage, not a ceiling. The statutes merely seek to ensure that retired firefighters and policemen have access to coverage that is at least equal to that provided to active employees. The statutes accomplish this goal by creating a statutory right to such equivalent coverage.[7] However, if a retiree already has vested rights to greater health insurance benefits through some other source (such as a collective bargaining agreement), nothing in either statute purports to abrogate or diminish such rights.

¶ 36    The City also urges us not to apply the vesting presumption applied in *Roth* because *Roth* announced a policy preference of the Wisconsin Supreme Court that is "in open opposition to Seventh Circuit jurisprudence." The City contends that "developing State labor law that openly rejects federal labor law within the same jurisdiction is not appropriate." However, contrary to the City's assertion, we are not required to apply Seventh Circuit decisions or any other federal common law to resolve the state-law contract issues presented in this case. As noted above, the LMRA does not preempt state-law claims for the breach of collective bargaining agreements by a municipal employer. 29 U.S.C. § 152(2) (2000). Moreover, most

---

[7] There is support for this proposition in the legislative history of section 367f. During the third reading of the bill in the Illinois House of Representatives, Representative Stuffle, one of the bill's sponsors, stated: "[the bill] provides for the continued inclusion of municipal firemen where there are already in place group insurance health plans in the municipalities. Currently, those people are covered at the option of the cities. This Bill provides that they will be covered if those insurance policies are now in force." 83d Ill. Gen. Assem., House Proceedings, Apr. 7, 1983, at 67 (statements of Representative Stuffle). Thus, although we find sections 367f and 367g to be unambiguous (rendering consideration of the statutes' legislative history unnecessary), this history supports our interpretation of the statute.

of the federal cases which apply an inference against the vesting of retirement health care benefits address claims in which the Employment Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 *et seq.* (2000)) is at issue. See, *e.g.*, *Skinner Engine*, 188 F.3d at 139; see also *Poole*, 831 A.2d at 221. ERISA requires the vesting of *pension* rights, but does not require the vesting of health or other "welfare benefits" for retirees. *Sullivan v. CUNA Mutual Insurance Society*, 649 F.3d 553, 555 (7th Cir. 2011); *In re Visteon Corp.*, 612 F.3d 210, 232 (3d Cir. 2010). Several federal courts have concluded that this fact supports a presumption against the vesting of retirement healthcare benefits. See, *e.g.*, *Skinner Engine*, 188 F.3d at 139 ("Because vesting of welfare plan benefits constitutes an extra-ERISA commitment, an employer's commitment to vest such benefits is not to be inferred lightly and must be stated in clear and express language."); *Poole*, 831 A.2d at 222 ("The courts imposing a presumption against vesting base that approach largely on their construction of ERISA-drawing an adverse inference from Congress' decision to require vesting for pension rights, but not to include a comparable requirement for welfare benefits." (Emphases omitted.)).[8] These cases are inapposite because ERISA does not apply to government-sponsored and government-funded benefit plans for municipal employees like the health benefit plan at issue in this case. See 29 U.S.C. §§ 1002(32), 1003(b) (2000); see also *Poole*, 831 A.2d at 221. Thus, any inference against vesting implied by ERISA has no application in this case.[9]

¶ 37     In addition, not all federal courts follow the Seventh Circuit's presumption against the

---

[8]See also *Sengpiel v. B.F. Goodrich Co.*, 970 F. Supp. 1322, 1337 (N.D. Ohio 1997) ("Courts may not casually infer the existence of vesting; doing so would undercut Congress' considered decision that, while pension benefits are strictly regulated and guaranteed, welfare benefits have no such protection."), *aff'd*, 156 F.3d 660 (6th Cir. 1998), *cert. denied*, 526 U.S. 1016 (1999); *Adams v. Avondale Industries, Inc.*, 905 F.2d 943, 947 (6th Cir. 1990) (cautioning that in determining scope and extent of employers' obligations under welfare benefit plans, courts should avoid undermining Congress' "considered decision that welfare benefit plans not be subject to a vesting requirement"); see also *In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation*, 58 F.3d 896, 902 (3d Cir. 1995); *Gable v. Sweetheart Cup Co.*, 35 F.3d 851, 855 (4th Cir. 1994); *Navlet*, 194 P.3d at 227, 233 n.13.

[9]The City argues that a similar inference against vesting is implied by the pension protection clause of the Illinois Constitution (Ill. Const. 1970, art. XIII, § 5). Specifically, the City notes that the pension protection clause "provides that public employee pension rights vest at the time of entry into the pension plan," but "there is no obligation that Illinois municipalities provide health insurance to its employees." We disagree. Even assuming *arguendo* that the pension protection clause does not protect health care benefits (a question that we do not decide here), that fact would not support any inference against vesting in this case. The protections afforded by a constitutional provision do not determine contractual rights under a collective bargaining agreement. Put another way, the fact that the vesting of health care benefits is not constitutionally required does not mean that the parties cannot agree to vest those rights by contract. The City does not and cannot argue that the pension protection clause somehow precludes parties from making such contractual agreements. Nor has it identified any cases suggesting that the pension protection clause creates a presumption against the vesting of such benefits through collective bargaining agreements.

-13-

vesting of retirement health care benefits. For example, the Sixth Circuit has ruled that, when the parties contract for benefits which accrue upon achievement of retiree status, "there is an inference that the parties likely intended those benefits to continue as long as the beneficiary remains a retiree." *International Union, United Automobile, Aerospace, & Agricultural Implement Workers of America v. Yard-Man, Inc.*, 716 F.2d 1476, 1482 (6th Cir. 1983); see also *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. BVR Liquidating, Inc.*, 190 F.3d 768, 772 (6th Cir. 1999). Although this so-called "*Yard-Man* inference" does not rise to the level of a legal presumption and does not shift the burden of proof to the employer (*Yolton v. El Paso Tennessee Pipeline Co.*, 435 F.3d 571, 579 (6th Cir. 2006)), it provides an additional inference in favor of vesting where the contract language or other evidence supports that conclusion (*id.*). This represents a less jaundiced approach to the vesting of retirement health care benefits than the approach taken by the Seventh Circuit. See *Bidlack*, 993 F.2d at 613 (Cudahy, J., concurring in the judgment, joined by Ripple and Rovner, JJ.) (noting difference between the *Bidlack* majority's approach and the approach taken in *Yard-Man*). When there is a split of authority between the Seventh Circuit and another federal circuit on an issue of federal law that has not been resolved by the United States Supreme Court, we are not required to follow the Seventh Circuit decision. *Ramette v. AT&T Corp.*, 351 Ill. App. 3d 73, 83 (2004). Rather, we may apply whichever decision we find to be "more reasonable and logical." *Id.* Thus, even if we were to apply federal common law in deciding the contract issues presented in this case, we would not necessarily employ the Seventh Circuit's antivesting presumption.

¶ 38       Accordingly, we rule that the plaintiffs' collective bargaining agreements should be interpreted in light of a presumption in favor of the vesting of retirement health care benefits, as in *Roth*. We will therefore presume that such benefits vest unless: (1) the language of the collective bargaining agreements unambiguously suggests otherwise; or (2) if the contract language is ambiguous, extrinsic evidence suggests that the parties did not intend the benefits to vest.


¶ 39                     C. Whether the Plaintiffs' Retirement Health Benefits Vested

¶ 40       We now turn to the merits of the question addressed in the parties' supplemental briefs, *i.e.*, whether each plaintiff has a vested right to receive the specific health care benefits promised in the collective bargaining agreement under which he retired. When interpreting collective bargaining agreements, as with other contracts, our objective is to ascertain and give effect to the intent of the contracting parties. *City of Rockford v. Unit Six of the Policemen's Benevolent & Protective Ass'n*, 351 Ill. App. 3d 252, 257 (2004). The best indication of the parties' intent is the plain language of the contract. *Id.* If the plain language of the agreement is ambiguous, extrinsic evidence may be introduced to aid in its interpretation. *Lewis v. Board of Education of North Clay Community Unit School District No. 25*, 181 Ill. App. 3d 689, 701 (1989). As noted above, unless the language of the collective bargaining agreements or extrinsic evidence shows that the parties did not intend the health benefits at issue to vest, we will presume that the parties intended these benefits to survive the expiration of the collective bargaining agreements.

¶ 41    The record is not sufficiently developed for us to decide this issue. As noted above, each of the plaintiffs' collective bargaining agreements provided that "[p]ayment of any and all retiree health benefits shall be made solely in accordance with and subject to the terms, conditions, and provisions of the Plan Documents (Employees Benefit Plan No. 15083 and Group Policy No. 47942) which are on file in the Office of the City Clerk." The Plan Documents referenced in these provisions are not in the record. A review of the Plan Documents might help us to decide dispositive issues, such as whether the parties intended the retirees to have vested rights to certain specific benefit levels, and whether the contractual term "Hospitalization and Major Medical Benefits" was meant to include deductibles or copayments for prescription drugs. Moreover, we cannot determine whether the City violated any terms, conditions, or provisions of the Plan Documents without reviewing those documents.

¶ 42    Further, because this case was argued before the circuit court solely on the constitutional issue, the parties have not had an opportunity to present all of the extrinsic evidence that might be relevant to the vesting issue. For example, the parties might want to present additional evidence of their course of conduct after each claimant retired, such as evidence that the City continued to pay the particular benefit levels it had promised the retirees or, alternatively, that plaintiffs paid higher deductibles or prescription drug copayments than they were paying at the time of their retirement. Although there is some such evidence in the record, neither party has had a chance to present all of the relevant extrinsic evidence supporting its case.

¶ 43    Accordingly, it would be premature for us to decide the contract issue. Given the undeveloped state of the record, we are not in a position to apply a vesting presumption because we do not yet know whether the contract is ambiguous on the issue of vesting or, if so, whether the extrinsic evidence (taken as a whole) suggests that the parties did not intend the benefits at issue to vest. We must therefore remand the matter to the circuit court so that the parties may present additional evidence and the court may determine whether the plaintiffs have a vested right to the retirement health benefits at issue. See *Roth*, 2000 WI 100, ¶¶ 39-40, 237 Wis. 2d 173, 614 N.W.2d 467 (remanding the cause to the circuit court where the record was "sparse," "undeveloped," and "incomplete," thereby precluding the Wisconsin Supreme Court from applying a vesting presumption and deciding the matter).[10]

_____

[10]In remanding this case for a determination on the contract issue, we are not acting as an "advocate" for either party. See *Givens*, 237 Ill. 2d at 323. We are ordering the parties to present evidence and argument on the contract issues to the circuit court and directing the circuit court to rule on those issues. It should be noted the parties were given an opportunity to brief the contract issues, and we are remanding only after reviewing their briefs on those issues. In deciding the case, the circuit court will have the benefit of the parties' evidence and argument as to the contract issues. In sum, we are ordering the parties to present evidence and argument before the circuit court so that it may consider all alternative nonconstitutional bases.

¶ 44                             CONCLUSION

¶ 45    Before deciding this case under the pension protection clause of the Illinois Constitution, the circuit court should have first determined whether it could be decided on nonconstitutional grounds. The contractual issue discussed above must be considered before any constitutional issues may be decided. Thus, pursuant to the constitutional avoidance doctrine and Supreme Court Rule 366(a)(5), we reverse and remand so that the circuit court may take additional evidence and determine whether each plaintiff has a vested right to receive the specific health care benefits promised in the collective bargaining agreement under which he retired. After considering all of the evidence relevant to this question, the court shall apply a presumption in favor of vesting as described in the foregoing opinion unless: (1) the language of the collective bargaining agreements unambiguously shows that the parties did not intend the benefits to vest; or (2) if the contract language is ambiguous, extrinsic evidence suggests that the parties did not intend the benefits to vest. Only if the circuit court finds no vested contractual rights should it address whether the benefits at issue are protected under the pension protection clause.

¶ 46    Reversed and remanded.